**MEDUSA AGGREGATES COMPANY, Appellant,**

**v.**

**CITY OF COLUMBIA, Marilyn Gaeth, Donald Lang, Dana Weaver, Jim Loveless, and Dale Kiepe, Respondents,**

**and**

**Parkade Neighborhood Association, Prairie Hills Homeowners' Association, William Ed Sapp, Betty Jean Sapp, James E. Corgan, Rose B. Corgan, Billy Joe White, Hazel L. White, Lawrence K. Glabe, Kathleen S. Glabe, Leslie J. Sapp, and Mary H. Sapp, Respondents.**

**No. WD 48483.**

Missouri Court of Appeals,
Western District.

June 21, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Matthew B. Woods, Columbia, Michael T. White, Kansas City, for appellant.

Fred Boeckmann, City Counselor, David B. Rogers, Columbia, for respondents.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

The Columbia Board of Zoning Adjustment (BZA) blocked Medusa Aggregates Company's installation of a concrete plant and asphalt plant next to its rock quarry in Columbia. Medusa appeals the trial court's affirming BZA's decision. We affirm.

Medusa operates the quarry as a legal, nonconforming use in an agricultural zone (A–1). Medusa requested a permit to build ready-mix concrete and asphalt plants on the property. Two concrete plants and one asphalt plant already operate in Columbia in connection with Medusa's competitor quarry. Columbia's supervisor of protective inspection denied the request, and Medusa appealed to BZA. Medusa contended that the asphalt and concrete plants were accessory uses to the quarry, or, in the alternative, that such use was appropriate because of the absence of an express prohibition against asphalt or concrete plants in the city's zoning ordinances.

Numerous residents of houses near Medusa's quarry testified against the proposal at BZA's hearing. BZA ruled that neither an asphalt plant nor a concrete plant was an accessory use to a quarry and that neither plant was an appropriate use in the agricultural district.

Medusa appealed to the circuit court. In its petition for writ of certiorari, it claimed that BZA's action was unlawful and was not supported by competent and substantial evidence. Medusa offered new evidence to correct figures given during the hearing concerning how many quarries in Boone County had asphalt plants, but the trial court denied their offer and affirmed BZA's decision.

Medusa argues in this appeal that "the trial court erred in affirming the BZA's decision because [that] decision was unlawful and not supported by the evidence which established that rock mixing plants are accessory uses to a quarry." We review BZA's decision, not the circuit court's. *City of Cabool v. Missouri State Board of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). We view the evidence in the light most favorable to BZA's findings and give its decision the benefit of all reasonable inferences from the record. We must not disturb that decision unless it is clearly contrary to the weight of the evidence. *Eubanks v. Board of Adjustment,* 768 S.W.2d 624, 627 (Mo.App.1989).

Columbia's zoning ordinance defines an accessory use as "a use customarily incident to the main use of the property." COLUMBIA,

Mo., CODE OF ORDINANCES § 29–2 (1992). Medusa argues that the evidence establishes that rock mixing plants are customarily incident to quarries. It claims that asphalt and concrete plants are customarily located in quarries and that asphalt and concrete plants are incidental to quarries. It cites evidence that crushed rock from the quarry constitutes 95 percent of asphalt and 80 percent of concrete. Medusa states, "[A]sphalt and concrete processing are simply a minor step in the processing of crushed stone into a finished and semi-finished product." We disagree with Medusa's logic and conclude that rock mixing plants are not accessory uses under Columbia's zoning ordinance because they are not "incident to" a quarry's main use.

BLACK'S LAW DICTIONARY defines "incident:" "Something dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance, something arising or resulting from something else of greater or principal importance." *Id.* at 762 (6th ed. 1990). The evidence presented at the hearing indicates that an asphalt plant or a concrete plant would not be subordinate to the quarry but would expand Medusa's operation so extensively that Medusa would be operating a new business.[1] Allowing the new plants would also increase the quarry's activity. Evidence indicated that truck traffic and blasting would increase.

This establishes that an asphalt plant or a concrete plant would not be subordinate to the quarry; the quarry would be subordinate to the new plants. The quarry would operate to the new plants' benefit, not vice versa. Substantial evidence supported a finding that the rock mixing plants were not accessory uses.

Hence, we affirm the trial court's judgment.

All concur.

---

1. The president of Medusa said that the company needed the asphalt and concrete plants to stay competitive. He spoke of the plants' bringing new customers.