647 A.2d 966

**Richard MILLER and Lucia Miller, his wife, Appellants,**

v.

**ZONING HEARING BOARD OF ROSS TOWNSHIP
and the Township of Ross.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1994.

Decided Aug. 29, 1994.

Reargument Denied Oct. 25, 1994.

Pamela G. Cochenour, for appellants.

C. Donald Gates, Jr., for appellees.

Before CRAIG, President Judge, and PELLEGRINI, J., and RODGERS, Senior Judge.

CRAIG, President Judge.

Richard and Lucia Miller, the appellants here, ask that we reverse the decision of Judge Penkower of the Court of Common Pleas of Allegheny County affirming the decision of the Zoning Hearing Board of Ross Township to deny the Millers' request for a variance to operate a dental office in an R–1 District. The Millers contend that their property, which is surrounded by roads, is unsuitable for residential purposes and cannot be utilized for any of the permitted uses because of the lot's configuration. We affirm.

The facts, as found by the board, are as follows. The Millers purchased a plot of land at 102 Three Degree Road, zoned R–1 Residential. Richard Miller is a dentist and he intended to convert the house on the lot into a residential dentist office on the bottom floor with an apartment to rent upstairs. The Millers do not intend to reside on the property.

The Millers applied for a variance for the proposed use, which the board denied after a hearing. In the common pleas court, Judge Farino affirmed the board's decision, and the Millers appealed to this court. This court remanded the case because the board had not supplied sufficient findings of fact to allow meaningful appellate review. *Miller v. Zoning Hearing Board of Ross Township* (No. 1104 C.D.1988, filed January 6, 1989).

On remand, the board provided the following supplemental Findings of Fact:

1. The property at 102 Three Degree Road is approximately a quarter acre lot zoned R–1 which appellant purchased with the intention of opening a community dental office with an upstairs rental apartment.

2. Appellant purchased the property fully aware of the zoning restrictions, which precluded his operating a dental office at the premises.

3. The home on the property was previously occupied as a residence by a woman whose husband had died and who moved because the property became too much of a burden on her to keep up.

4. Appellant purchased the property after it was on the sales market for about ten years, and after a prior potential purchaser was denied an application for a similar variance to conduct a commercial activity on the premises. The prior potential purchaser did not proceed with the deal.

5. Appellant has no intention of living at the premises, already owning and occupying a resident in Shaler.

6. Appellant presently rents space on Babcock Boulevard for his dental office.

7. The premises is situated like an island, bounded by Perry Highway, Three Degree Road, Third Street and Reel Avenue.

[8.[1]] The corners of Perry Highway and Three Degree Road across from the premises are occupied by a restaurant, the restaurant's parking lot and a gas station.

[9.] A heavy volume of traffic exists in front of the premises along Perry Highway and Three Degree Road. The traffic problem has extended into the Reel Avenue, Second and Third Street roads surrounding the premises as drivers attempt to avoid the heavy traffic at the intersection.

[10.] The proposed dentist office would have access from either Three Degree Road or Reel Avenue, with hours from 9 to 5 on Mondays through Fridays.

[11.] The area behind the premises is a well established family residential neighborhood the residents of which who feel that preservation of the residential character will be threatened through allowing a commercial activity in the premises.

[12.] The residents in the Second Street and Reel Avenue area have adapted to the heavy traffic volume by having

---

1. We have corrected the sequential numbering of the board's findings of fact.

warning signs as to the presence of children erected by the Township, by erecting fences to restrict their children's access to the streets and by generally exercising more care and caution in traversing their neighborhood. However, they feel that the area is at a point where its residential character is threatened by the possibility of any more traffic.

[13.] The occupants of the homes behind the premises, Reel Avenue and Second Street, believe that the granting of a variance to allow a commercial activity in the premises will exacerbate the existing heavy traffic problem which threatens the safety of the neighborhood children and will open the area to increasing expansion of commercial usage, thereby destroying the long-standing residential nature of their neighborhood.

[14.] The premises was in the past and can be at present used as a residence and is not rendered completely useless by virtue of being in an R–1 zoning district.

The Millers again appealed to the common pleas court. Judge Penkower reviewed the supplemental findings of fact and affirmed the board. The trial court did not receive additional evidence. Now the Millers have appealed to this court.

■ Our standard of review in zoning cases where the trial court has not taken evidence is limited to determining whether the board made findings of fact that are not supported by the evidence or made an error of law. *Vanguard Cellular Systems, Inc. v. Zoning Hearing Board of Smithfield Township,* 130 Pa.Commonwealth Ct. 371, 568 A.2d 703 (1989), *petition for allowance of appeal denied,* 527 Pa. 620, 590 A.2d 760 (1990).

■ The only permitted use in the R–1 District is the "single family detached dwelling" (SFDD). Several accessory uses are allowed, but those are not at issue here. The ordinance defines "dwelling" as follows:

A: Dwelling: A building containing one (1) or more dwelling units.

B: Dwelling Unit: Any room or group of rooms located within a residential building and forming a single, habitable unit with facilities used or intended to be used for living, sleeping, cooking and eating by one (1) family.

The ordinance then imposes the following regulations on a SFDD:

1. Single family detached

Single family detached dwellings on individual lots with no public or community open space. All dwelling units shall be situated on permanent masonry foundations, including footings constructed below the frost line.

Parking: Two (2) off-street spaces per dwelling unit, provided at least one (1) parking space shall be in a garage.

The Millers want a variance to keep a residential use on the second floor of the house, but to also have a professional office on the first floor. In fact, although there is no evidence of any commercial use presently taking place on the lot, the record indicates that the Millers had a second-floor tenant at the time of the public hearing.

The ordinance makes provisions for the type of use sought by the Millers. This type of use is called a "Dwelling in Combination," and it is a permitted use in the C–2 and C–3 Commercial Districts. The following use regulations apply to a dwelling in combination:

7. Dwelling in Combination

Dwelling in combination with an existing or permitted office or commercial use, provided parking requirements for the nonresidential units are met.

Parking: one and one-half (1.5) off-street parking spaces per dwelling unit.

A dwelling in combination is not a permitted use in the R–1 District, nor is it allowed there as a conditional use or by special exception.

Thus, the Millers must receive a variance for a dwelling-in-combination use in the R–1 District. The requirements for receiving a variance are set forth in the Municipalities Planning Code (MPC), as follows:

(a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

(b) In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem neces-

sary to implement the purposes of this act and the zoning ordinance.

Section 910.2 of the MPC, 53 P.S. § 10910.2.

■ Simply stated, a landowner cannot get a variance unless she can prove that her land is virtually useless as it is presently zoned because of unique circumstances that affect the property, that she did not create her hardship, and that she seeks the minimum variance necessary so as to be able to use the property. Therefore, in order for the Millers to receive a variance, they must first prove that their property is virtually unusable as a SFDD because of unique circumstances affecting their property.

The Millers have proved that their property is affected by a unique circumstance because it is surrounded by heavily traveled roads and it is across the street from two commercial uses. However, the Millers have been unable to prove that the property is virtually useless as a SFDD because their property was actually being used as a SFDD when the Millers appeared before the board. At that time the Millers had a tenant on the premises.

The Millers contend that the use at that time is more properly characterized as an apartment, which is also not permitted in the R–1, and therefore more proof of their need for a variance. We cannot agree with the Millers' argument because it is not in accordance with the ordinance's definition of apartment, which follows:

5. Apartment

Multi-family dwelling units where individual dwelling units share a common access. Each unit shares with other units a common yard area, which is the sum of the required lot areas of all dwelling units within the building(s).

Theirs is not used as a multi-family dwelling. Rather, allowing a tenant in the second floor apartment, that is, a dwelling unit "located within a residential building ... forming a single, habitable unit" (*see* "dwelling unit", above) constitutes use as a SFDD.

In addition, a dwelling in combination, by definition, requires that the property be useful, at least to some extent, for residential purposes. If the property can be used as a combined office and residence, it can also be used exclusively as a residence, although at a lower economic value for the Millers.

Therefore, the board did not err in denying the Millers' variance. The Millers did not meet their burden of showing that the property is valueless as a SFDD.

The remainder of the Millers' arguments address the other requirements of the MPC. However, whether or not the Millers can prove the remaining elements needed for a variance, they cannot succeed in their request to use their property as a dwelling in combination. Therefore, we need not address those arguments here.

Accordingly, we must affirm the decision denying the Miller's request for a variance.

## ORDER

NOW, August 29, 1994, the order of the Court of Common Pleas of Allegheny County dated April 30, 1993 at No. S.A. 1905 of 1987, is affirmed.

KELLEY, J., did not participate in the decision and was therefore replaced by PELLEGRINI, J., to whom the case was submitted on briefs.

RODGERS, Senior Judge, dissents.