WELLS & HIGHWAY 21
CORPORATION,
Respondent,

v.

Zane YATES, et al., Appellant.

WELLS & HIGHWAY 21
CORPORATION,
Appellant,

v.

Zane YATES, et al., Respondent.

Nos. 63836, 63898.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 1995.

Application to Transfer Denied
May 30, 1995.

**58**

Patricia Redington, Clayton, for Yates, et al.

George E. Schaaf, Clayton, for Wells.

DOWD, Judge.

This is a zoning case. Wells & Highway 21 Corporation (Owner) purchased the property in question after the St. Louis County Planning Commission (Planning Commission) voted to approve an application for a change in zoning. However, the County Council rejected the Planning Commission's recommendation and denied the petition for rezoning. Owner then filed a petition for a variance with the St. Louis County Board of Zoning Adjustment (BZA). After the BZA denied the variance, Owner filed a three-count petition in circuit court seeking: (1) a writ of certiorari directing the BZA to grant Owner a variance; (2) a declaratory judgment against the County declaring its zoning classification of the property unreasonable, inval-

id and unconstitutional; and (3) damages for the County's regulatory taking of the property. The trial court ruled in favor of Owner on Count II, its declaratory judgment claim, but denied its request for a writ of certiorari in Count I. The trial court did not rule on Count III but found Counts I and II were final for purposes of appeal and there was no just reason for delay. St. Louis County appeals the trial court's decision on Count II, and Owner appeals its decision as to Count I. We reverse as to Count II and affirm as to Count I.

The property in question is a 5.3 acre parcel of land located at the southwest corner of the intersection of Missouri State Highway 21 [1] and Wells Road. According to a 1988 traffic count, Highway 21 carries 21,000 cars per day and Wells Road carries 5,400 cars per day. The property currently lies within a R–2 residential zone and is improved with a single-family house. All tracts of land abutting the property are zoned for residential use. Some of the adjoining land is zoned R–2, and some is zoned R–6A, a higher density residential district. There are also several commercial properties in the vicinity. The following are sketches of the location of the property and the zoning of the surrounding property. These sketches were part of the record before the trial court. Neither is drawn to scale.

---

1. Also known as Tesson Ferry Road.

The permitted uses for R–2 property are: churches, single-family dwellings, forests and wildlife reservations, golf courses, home occupations, libraries, certain local public utilities, parks and playgrounds, and schools. Other conditional uses which are available by permit include: child care/nursery, private not-for-profit clubs and community centers, foster homes for handicapped children, golf courses, group homes for the developmentally disabled and elderly, religious facilities, hospitals, nursing homes, and police and fire stations.

In November of 1987, a petition was filed to have the property rezoned as a C–8 Planned Commercial District. In a C–8 district, an owner may use the property for a specifically approved commercial development. However, all commercial uses must be approved by the County to ensure they are compatible with the adjoining districts, and the County is also permitted to place conditions on C–8 commercial developments to protect the integrity of the area. Here, the Planning Commission recommended approval of a retail/office building and a convenience store with gas pumps and a car wash. One month later, Owner purchased the property for $450,000. Despite the Planning Commission's recommendation, the County Council voted not to rezone the property. Owner then applied to the BZA for a variance to permit the property to be used for retail and office space and a convenience store. After a public hearing, the BZA denied the request for a variance. Owner then filed its three-count petition with the trial court.

In its sole point, the County alleges the trial court erred in declaring the R–2 residential zoning of Owner's property was invalid because it unreasonably restricted Owner's use of the property. Because zoning ordinances are legislative acts, challenges to their validity are reviewed *de novo*, with deference to the trial court's ability to assess the credibility of the witnesses. *J.R. Green Properties v. Bridgeton*, 825 S.W.2d 684, 686[1] (Mo.App.1992). The zoning ordinance is presumed to be valid, and Owner bears the burden of proving unreasonableness. *Id.*

Any uncertainty about the reasonableness of a zoning ordinance should be resolved in the County's favor; and if the issue is fairly debatable, the reviewing court may not substitute its opinion for that of the County. *Elam v. City of St. Ann,* 784 S.W.2d 330, 335[3] (Mo.App.1990).

■ Zoning ordinances are required by the due process clauses of both the Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Missouri Constitution to "bear a substantial relationship to health, safety, morals or the public welfare." *Id.* at 334[1]. However, we also consider the private detriment caused by the application of a zoning ordinance to a particular tract of land. *Id.* Thus, a zoning ordinance may be considered unconstitutionally unreasonable if it is demonstrated that the private detriment outweighs the public benefit from retaining it. *Id.* at 334–35[2]. Missouri courts use a two-step analysis in determining the validity of a zoning provision. *State ex rel. Barber & Sons v. Jackson Cty.,* 869 S.W.2d 113, 117[9] (Mo.App.1993); *White v. City of Brentwood,* 799 S.W.2d 890, 893[4] (Mo.App.1990). First, we must determine whether the property owner has presented sufficient evidence to rebut the presumption that the present zoning is reasonable. *Barber,* 869 S.W.2d at 117[9]. If so, we then determine whether the government's evidence establishes that the reasonableness of continuing the present zoning is a fairly debatable issue. *Id.*

■ Owner argues "[t]he existing zoning imposes a private detriment upon the interests of the owner because it restricts the property to uses for which it is not adaptable by reasons of location, topography, size and economic feasibility." Factors which indicate a private detriment are the adaptability of the subject property to its zoned use and the effect of the current zoning on the property's value. *Elam,* 784 S.W.2d at 335[5].

■ The experts who testified at trial had differing opinions as to the value of the property as zoned and its adaptability for any use allowed under R–2 zoning. Owner and the County each called one land planner, one engineer, and one appraiser to testify. Glen Powers, the County's land planner, testified the property was suitable for either a single-family dwelling or a small subdivision. He also stated a commercial use could be appropriate, but a road alignment would be necessary. He stated there was nothing unique about the topography of the property which made it more suited for commercial development rather than residential. He stated most of the R–2 uses would be appropriate. John Baggs, Owner's land planner, stated the land was only suitable for commercial uses because none of the uses allowed under R–2 zoning either with or without a special permit were economically feasible because of the necessity of realigning the intersection of Highway 21 and Wells Road. However, Baggs only did a feasibility analysis for one of the permitted uses, a residential subdivision. Further, he stated uses such as a church, nursing home, or day-care center would be "harmonious with the surrounding uses."

Michael Goeke, Owner's appraiser, prepared two economic feasibility analyses, one using the property for an eight-lot subdivision and the other using the property for a commercial development with sites for retail/office space and a gasoline/convenience store. Goeke also found that a subdivision of single-family residences would not be economically feasible because of the cost of road improvements which would be required by the County. In calculating the development costs for both projects, Goeke allotted $179,000 for road improvements. However, Don Spencer, the County's planning and design engineer, testified the developer only has to pay the Traffic Generation Assessment (TGA), the portion of road improvements attributable to the traffic generated by the particular development. The TGA contribution for a single-family residence is only $530. So, the developer would have to pay $4,240 in road improvements for the eight-lot subdivision rather than the $179,000 which would be required for the proposed commercial development.

Arthur Schneider, the County's appraiser, stated R–2 zoning of this property was economically feasible. He testified the property had a value of $209,000 for development as a

residential subdivision with eleven lots. He also stated he believed the property could be developed as a nursing home, church, childcare center, or private not-for-profit club.

Any private detriment Owner suffers as a result of the current R–2 zoning classification is insufficient to rebut its presumed validity. Showing a mere difference in value under different zoning does not establish a private detriment substantial enough to require a zoning change. *City of Brentwood,* 799 S.W.2d at 894[5]. Owner failed to meet its burden of showing the property was not suitable for any R–2 purpose. Although there are commercial developments nearby, all of the adjoining property is zoned residential. Further, because Owner purchased the property knowing it was zoned residential, it is prohibited from claiming the R–2 zoning frustrated a "legitimate investment backed expectation." *Elam,* 784 S.W.2d. at 338[6].

█ Owner also argues "[t]he existing zoning does not serve the public welfare." It argues the public benefit of maintaining R–2 zoning on this parcel is very minimal because there are other commercial developments in the area, and much of the abutting property is used for higher density residential developments than are allowed under R–2 zoning. Factors used in measuring the public benefit of maintaining the existing zoning include: the character of the neighborhood, the zoning and uses of nearby property, and the effect that a change in the zoning will have on other property in the area. *City of Brentwood,* 799 S.W.2d at 894[6]. While the area to the north of the property becomes progressively more commercial as Highway 21 approaches Interstate 270, the area surrounding the lot is still mainly residential. Further, in *Tealin Co. v. City of Ladue,* the Missouri Supreme Court stated:

> [J]ust because there has been commercial development in a given area [does not mean] that zoning ordinances must automatically give way to an individual's desire to establish a business enterprise in a section zoned residential. Nor does it mean that just because the land will bring a higher price if used commercially rather than residentially that the residential zoning restrictions must give way to commercial usage. If the price land would bring for commercial use as compared to resi-

dential use were the criterion upon which the continued validity of a residential zoning ordinance depended, there would be few, if any, residentially zoned districts in a metropolitan area that would remain residential. (Citations omitted.)

541 S.W.2d 544, 549[1] (Mo. banc 1976).

Our review of the evidence does not show Owner rebutted the presumption that the current R–2 zoning classification is reasonable. At least, the issue is fairly debatable; and therefore, the County is to be given the benefit of the doubt. The trial court's ruling on Count II is reversed.

█ Next, we must address Owner's argument that the trial court erred in upholding the BZA's denial of its request for a variance. In doing so, we review the decision of the BZA, not the trial court. *Hutchens v. St. Louis County,* 848 S.W.2d 616, 617[1] (Mo.App.1993). Our inquiry is limited to determining whether the BZA's decision to deny the use variance is authorized by law and supported by competent and substantial evidence upon the whole record. *Id.* at 617[2]. To be entitled to a use variance, Owner must have established: (1) it will suffer an unnecessary hardship in carrying out the strict letter of the ordinance; (2) relief is necessary because of the unique character of the property; (3) the variance will not destroy the preservation of the plan; and (4) granting the variance will result in substantial justice for all. *Long v. Board of Adjustment,* 856 S.W.2d 390, 392[6] (Mo.App.1993). To demonstrate an "unnecessary hardship," Owner must show the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone, the owner's plight is due to unique circumstances and not to general neighborhood conditions, and the grant of a variance would not alter the essential character of the locality. *Matthew v. Smith,* 707 S.W.2d 411, 416–17[2] (Mo. banc 1986).

█ Applying these tests, we find substantial and competent evidence supports the BZA's denial of Owner's request for a variance. Owner failed to show it cannot get a reasonable return on the property under any of the uses allowed under R–2. Owner is only entitled to a reasonable return on the property, not the maximum return. Owner

argued the expense of the necessary road improvements made all allowable R–2 uses impractical. However, the County's planning and design engineer testified, if the property were developed residentially, Owner's contribution for any road improvements would be limited to the TGA impact fee, about $530 per single-family residence. Further, we find Owner's plight is due to personal choice, rather than characteristics unique to the land, because it purchased the property for a commercial development knowing it was zoned residential. The BZA also correctly found that granting the requested variance may alter the essential character of the locality. The immediate surrounding properties are wholly residential, not commercial. Further, many residents of the surrounding suburbs testified in opposition to Owner's proposed development saying it would change the atmosphere of the area and cause traffic problems. Allowing the commercial site Owner sought to develop would certainly have had an effect on the abutting residential areas. Point denied.

Judgment reversed as to Count II and affirmed as to Count I.

CRANE, P.J., and CRANDALL, J., concur.