ENTERPRISE CITIZENS ACTION COMMITTEE, Appellant, v. CLARK COUNTY BOARD OF COMMISSIONERS, a Political Subdivision of the State of Nevada; UNION PACIFIC RAILROAD COMPANY, a Nevada Corporation; and INLAND PROPERTIES, INC., a Nevada Corporation, Respondents.

No. 25357

May 30, 1996

918 P.2d 305

[Rehearing denied September 5, 1996]

*Hayes & Gourley,* Las Vegas, for Appellant.

*Stewart L. Bell,* District Attorney, *Johnnie B. Rawlinson,* Chief Deputy District Attorney, Clark County; *Dominic P. Gentile, Ltd.* and *James N. Mancuso,* Las Vegas, for Respondents.

650

## OPINION

By the Court, ROSE, J.:

For many years, Union Pacific Railroad Company has owned a 180 acre tract of real property adjacent to its railroad track and easement in Clark County, Nevada. The property is zoned for Residential Estates and Union Pacific has twice tried to change this zoning, first in 1989 to Industrial Without Dwellings, and then to Light or Designed Manufacturing in 1991. Both applications were denied.

By 1993, Inland Properties, Inc. had agreed to operate a sand and gravel pit on the real property at issue, and respondents Union Pacific Railroad Company and Inland Properties, Inc. (respondents) filed for a zone change, conditional use permit, and zone variance, all of which were granted by the Clark County Board of Commissioners (Board). Appellant Enterprise Citizens Action Committee (appellant), a committee comprised of people who own property surrounding respondents' property at issue, filed a petition for a writ of mandamus in district court seeking to overturn the Board's decision. The district court denied the petition for a writ of mandamus. We conclude that the district court's denial of the writ petition was improper.

### FACTS

Respondents filed applications for a zone change, a conditional use permit, and a zone variance with the Clark County Department of Comprehensive Planning on June 15, 1993. At issue was an approximately 180 acre parcel of land owned by the respondents and located near Jones Boulevard south of the Blue Diamond Highway in Las Vegas.[1]

---

[1]Because the shape of the property at issue and the type of zoning surrounding the property are important to this opinion, both must be explained. The property is almost triangular in shape, but is better defined as a trapezoid, with the northern and southern boundaries running parallel to each other, the eastern boundary running perpendicular to the northern and southern boundary, and the western boundary running southwest to northeast, resulting in a northern boundary only about one third the length of the southern boundary. The dimensions of each boundary were not provided to this court, but in general terms if the northern boundary is one unit long, then the western boundary is four and one-half units long, the southern boundary

Respondents first requested that the property be "down-zoned" from R-E (Rural Estates) to R-U (Rural Open Land). In conjunction with this "down-zoning," respondents filed a second application for a conditional use permit to operate a sand and gravel pit on the property. Finally, respondents requested a zone variance in order to operate a concrete and asphalt batch plant in conjunction with the sand and gravel pit.[2] The only application at issue is the one requesting the variance because appellant admitted that the "down-zoning" from R-E to R-U was in conformity with the master plan[3] and the grant of the conditional use permit for the sand and gravel pit was in conformity with the Clark County Code.

The Board held a hearing regarding the three applications. Appellant opposed the variance because it permitted an industrial use of the property. It cited concerns regarding noise, dust particle control, traffic, and the safety of the children in the neighborhood. Respondents presented environmental studies indicating that potential problems cited by the appellant would be mitigated and that the project would have a favorable impact on the economic growth of the city. The Board voted 4-2 in favor of permitting the "down-zoning," granting the conditional use permit, and granting the variance.

Appellant filed a petition for a writ of mandamus in district court requesting that the Board's decision be overturned. It argued that a variance permitting the construction and operation of a concrete/asphalt batch plant would result in a high-intensity manufacturing use of the property in contravention of the master plan which had zoned the property for residential use. It also

is three units long, and the eastern boundary is four units long. The property has railroad tracks abutting the entire western boundary of the property. M-1 (Light Manufacturing) zoning extends directly west of the railroad tracks for 1,000 feet. All of the property located west of the M-1 zoning is zoned R-E (Residential Estates). The southern boundary is abutted by a road, and all of the property located south of that road is zoned R-E. The eastern boundary of the property is abutted by Jones Boulevard, and it appears that the property located east of Jones Boulevard is zoned for residential use. Finally, the northern boundary of the property is abutted by Serene Avenue, and it appears that the property located north of Serene Avenue is zoned for residential use. (This court was not provided with a map detailing what type of residential zoning existed on the property located directly east and north of the property at issue. However, residents from those areas testified in front of the Board of County Commissioners that they owned homes in those areas.)

[2]All three applications were filed at the same time.

[3]The property at issue was designated by the master plan as a Community 3 District. Appropriate land uses described for a Community 3 District are residential developments with densities equal to or lesser than two dwellings per acre, agricultural, recreational, open space and resource production land use. Property zoned both R-E and R-U satisfy these requirements.

argued that respondents had not demonstrated that they suffered any hardship or difficulty which warranted the Board's granting of a variance. The district judge, however, stated that respondents provided the Board with sufficient evidence of a hardship which warranted the variance. Additionally, the district judge felt that while it may have been sleight of hand for respondents to request the "down-zoning," use permit, and variance rather than requesting a zoning change, he concluded that it was clever lawyering, it was successful, and it was not illegal.

Appellant then filed a timely appeal requesting this court to reverse the district court's order denying its petition for a writ of mandamus.

## DISCUSSION

*Respondents presented no substantial evidence of hardship or difficulty to the Board which warranted the granting of a variance*

The grant or denial of a variance, like a grant or denial of a request for a special use permit, is a discretionary act. *See* City of Las Vegas v. Laughlin, 111 Nev. 557, 558, 893 P.2d 383, 384 (1995). "If this discretionary act is supported by substantial evidence, there is no abuse of discretion." *Id.* Substantial evidence is evidence which "a reasonable mind might accept as adequate to support a conclusion." State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986).

The function of the district court is to ascertain as a matter of law whether there was substantial evidence before the Board which would sustain the Board's actions, and the function of this court at this time is the same as that of the district court. McKenzie v. Shelly, 77 Nev. 237, 242, 362 P.2d 268, 270 (1961). Like the district court, this court is limited to the record made before the Board in reviewing the Board's decision. *Laughlin,* 111 Nev. at 558, 893 P.2d at 384. Finally, "no presumption of validity attaches to the decision of a district court that does not hear additional evidence in reviewing a zoning decision made by a municipality." City of Reno v. Harris, 111 Nev. 672, 677, 895 P.2d 663, 666 (1995). Because the district court heard arguments regarding whether there was substantial evidence to sustain the Board's actions but heard no additional evidence, the district court's decision will receive no presumption of validity.

We note, preliminarily, that the district court properly subjected the Board's actions to a substantial evidence standard of

review. However, after reviewing the record made before the Board, we conclude that respondents presented no substantial evidence to the Board which would sustain the Board's action granting the variance, and therefore we conclude that the Board abused its discretion in granting the variance and that the district court erred in denying appellant's petition for a writ of mandamus.

Clark County Code Section 29.66.030 grants the planning commission the power

> where by reason of exceptional narrowness, shallowness or shape of a specific property at the time of the enactment of the regulation, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of such regulation enacted upon this title would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardships, upon, the owner of such property, to authorize upon an application relating to the property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any ordinance or resolution and under such conditions as such board may deem necessary to assure that the general purpose and intent of this title will be observed, public safety and welfare secured and substantial justice done.

Therefore, respondents had the burden to prove that because of the narrowness, shallowness, topographic conditions or other exceptional conditions of the property, the strict application of the zoning regulations would result in "exceptional practical difficulties to, or exceptional and undue hardships, upon, the owner of such property."[4] *See* Constantino v. Zoning Hearing Bd., 618 A.2d 1193, 1196 (Pa. Commw. Ct. 1992) (concluding that the applicant has the burden to prove the hardship); Wells & Highway 21 Corp. v. Yates, 897 S.W.2d 56, 62 (Mo. Ct. App. 1995) (concluding that the applicant has the burden of proving the hardship). Only after respondents met this burden could the Board properly grant the variance.

This court has not previously provided a definition of hardship,

---

[4]Respondents argue that at the hearing in front of the Board, appellant did not challenge the variance on the grounds that no legal hardship or difficulty existed, and instead only complained about the noise, traffic, dust, and safety impacts of the project. However, respondents had the burden to prove that a hardship or difficulty existed, and therefore it was not incumbent upon appellant to raise the issue at the hearing.

but many other courts and authorities have done so. *See* 101A C.J.S. Zoning & Land Planning § 242 (1979) (hardship exists where the application of the regulation to property greatly decreases or practically destroys its value for any permitted use, so as to deprive the owner of the land of all beneficial use of the land); *Wells & Highway 21 Corp.*, 897 S.W.2d at 62 (hardship requires showing that land cannot yield reasonable return if used only for the purpose allowed in that zone); Concerned Residents v. Zoning Bd. of App., 634 N.Y.S.2d 825, 826 (App. Div. 1995) (hardship requires "dollars and cents" proof that property cannot yield reasonable return as currently zoned); Miller v. Zoning Hearing Bd. of Ross Tp., 647 A.2d 966, 969 (Pa. Commw. Ct. 1994) (hardship requires showing that land is virtually useless as it is presently zoned); State v. Winnebago County, 540 N.W.2d 6, 9 (Wis. Ct. App. 1995) (hardship is a situation where, in the absence of a variance, no feasible use could be made of the land). While we are not compelled to employ any of these definitions, we conclude that respondents have failed to prove, pursuant to any of these definitions, that the strict application of the zoning regulations would result in a hardship or difficulty which merited the granting of the variance.

On June 15, 1993, respondents submitted their zone change application, conditional use permit application, and variance application. The variance application requires the applicant to answer five questions regarding the variance. The questions, and respondents' answers (in italics), were as follows:

1. What special circumstances or conditions exist, applicable to the property or building referred to in the application, which you believe justify a change of restrictions (exceptional narrowness, shallowness, shape or topography?)

*a. Unusual lot shape resulting from railroad and street alignments.*

*b. Excess dedication required for arterial road (Jones Blvd.).*

2. Explain any other special circumstances or hardships (not pertaining to the lot) which you believe justify a change in restrictions.

*Site is near existing industrial uses and abuts railroad and M-1 zoning, making it unsuitable for residential use.*

3. Explain why the granting of this application is necessary for the preservation and enjoyment of substantial property rights.

*Facility will meet all applicable health and safety standards. Traffic impacts will be mitigated in accordance with traffic study.*

4. Explain how the granting of such application will not materially affect the health or safety or persons residing or working in the neighborhood and will not be materially detrimental to the public welfare or injurious to property or improvements in the neighborhood.

> *This area is master planned for R-U land uses by the recently-adopted Clark County land use guide for Enterprise.*

5. Explain how the granting of this application will not adversely affect the Clark County Comprehensive Plan.

> *[No answer given]*

Respondents argued to the district court and to this court that their answers on the variance application provided substantial evidence to prove that a hardship existed to justify the granting of the variance. However, we conclude that these answers were at most merely conclusory statements that a hardship or difficulty existed and that respondents presented no evidence that they were subjected to exceptional practical difficulties or exceptional and undue hardships which warranted the variance.

Respondents stated that the unusual shape of their property, the excess dedication required for Jones Boulevard,[5] the abutting railroad tracks on the western boundary, and the industrial zoning west of the railroad tracks were all special circumstances which they believed made the property unsuitable for residential use and justified a variance. According to Clark County Code Section 29.66.030, these reasons qualify as circumstances which *may* create exceptional difficulties to or undue hardships upon the property owner. However, these circumstances do not *ipso facto* create a difficulty or hardship which warrants a variance, and it is incumbent upon the property owner to prove what the hardship or difficulty is, i.e., the owner of the property would be deprived of all beneficial uses of the land if the land was used solely for the purpose allowed in that zone, the value of the property would decrease significantly if the property was used solely for the purpose allowed in that zone, a reasonable return on the property would not be realized unless the variance was granted, the land is virtually useless as zoned, or no feasible use could be made of the land as zoned.

Respondents had an opportunity to provide proof of a hardship or difficulty in their answer to question number three on the zoning variance application. The question asked respondents to explain why the variance was required to preserve the enjoyment

---

[5]Respondents never stated what "excess dedication" means.

of the property rights, in essence asking why the circumstances provided in the answers to questions one and two created a hardship or difficulty which required the granting of the variance. Respondents' answer stated only that the facility would meet health and safety standards and that traffic impacts would be mitigated. This answer was non-responsive and failed to provide any evidence that a hardship or difficulty existed which warranted the granting of the variance which would allow manufacturing in a residential district.

Respondents never explained why the circumstances listed in the answers to questions one and two made the property unsuitable for its zoned residential use and therefore valueless without a variance, especially in light of the fact that people owned residences in the immediate surrounding area. Moreover, respondents had already requested a conditional use permit to maintain a sand and gravel pit on the property which would have provided respondents with a conditionally permitted, non-residential use of the property. Respondents never alleged or argued that they could not receive a reasonable return from the operation of the sand and gravel pit absent the variance permitting the batch plant.

Additionally, respondents failed to present any evidence at the Board hearing to establish that the circumstances claimed by them created a hardship or difficulty which warranted the granting of the variance. Respondents presented the Board with five different reports addressing environmental, geological, economic, noise, and traffic impacts of the project. Respondents stressed to the Board that the project would have minimal noise impact, that traffic and safety concerns would be mitigated, and that the project would be a boon to the economy, creating both jobs and significant tax revenues. However, at no time did the Board inquire about or did respondents address the issue of why the lot shape, abutting railroad tracks, nearby industrial zoning, or dedications required on Jones Boulevard created a hardship or difficulty which warranted the variance in conjunction with the conditional use permit. In fact, the only two times that hardship or difficulty was even mentioned, the conclusion was that none existed: the opinion of the Board's staff was that no legal hardship existed (although the staff proclaimed that they were not concerned about that fact and recommended granting the variance), and one county commissioner stated that he believed no hardship existed.

Based on the variance application and respondents' testimony to the Board, it is clear that respondents provided no evidence to prove that the unusual lot shape, abutting railroad tracks, nearby manufacturing zoning, and dedications on Jones Boulevard created a hardship or difficulty which warranted the Board to grant a

variance allowing respondents to construct and operate a concrete/asphalt batch plant on property zoned R-U. Therefore, the district court erred in concluding that respondents had provided the Board with substantial evidence that a hardship existed and in subsequently denying appellant's petition for a writ of mandamus.

*The concrete/asphalt batch plant was not incidental to the sand and gravel pit, and additionally the sand and gravel pit was a conditional use not subject to the provisions allowing accessory uses, buildings and structures*

Respondents also argued that the concrete/asphalt batch plant was incidental to the sand and gravel business and should therefore be permitted. Respondents' argument fails for two reasons. First, the batch plant was not incidental to the sand and gravel pit. "Incident" is defined as "something dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance, something arising or resulting from something else of greater or principal importance." Black's Law Dictionary 762 (6th ed. 1990).

Other courts have determined that a concrete/asphalt batch plant is not incidental to a sand and gravel pit for several reasons. First, the concrete/asphalt plant can operate in any location and need not be adjacent to the sand and gravel pit. NBZ Enterprises v. City of Shakopee, 489 N.W.2d 531, 536 (Minn. Ct. App. 1992). Additionally, the concrete/asphalt batch plant does not serve the gravel pit by assisting or aiding in the excavation of the gravel, and is required only to mix necessary components to create a new product, either concrete or asphalt. *Id*. Finally, the addition of the concrete/asphalt batch plant might expand respondents' business so extensively that respondents would be operating a new business. Medusa Aggregates Co. v. City of Columbia, 882 S.W.2d 223, 225 (Mo. Ct. App. 1994). Therefore, a situation could arise whereby the concrete/asphalt batch plant would not be subordinate to the sand and gravel pit, but just the opposite would occur; the sand and gravel pit would be subordinate to the concrete/asphalt batch plant and would operate to the concrete/asphalt batch plant's benefit, not vice versa. *Id*. Such a situation would make a mockery of the master plan and therefore will not be permitted.

Second, the zoning regulations governing permitted uses of land in an R-U (Rural Open) district states that accessory uses,

buildings and structures, if clearly incidental to the *permitted use* and placed upon the same lot with a permitted use, will also be permitted. Clark County Code § 29.06.020 (B). However, sand and gravel pits are conditional uses requiring a permit and are not permitted uses. Clark County Code § 29.06.030 (C). The plain and ordinary meaning of Clark County Code Section 29.06.020 (B) is that it applies only to accessory uses, building and structures incidental to a permitted use and does not apply to accessory uses, buildings or structures incidental to a conditional use requiring a permit. *See* NBZ Enterprises v. City of Shakopee, 489 N.W.2d 531, 536 (Minn. Ct. App. 1992); Prior Lake Aggregates, Inc. v. City of Savage, 349 N.W.2d 575, 578-79 (Minn. Ct. App. 1984). Therefore, even if the batch plant was clearly incidental to the sand and gravel pit, the concrete/asphalt batch plant would still be disallowed because the sand and gravel pit is not a permitted use in an area zoned R-U.

*Respondents' strategy was an improper attempt to circumvent the master plan, and the Board's decision to grant the variance did not accord substantial deference to the master plan*

NRS 278.250 governs many aspects of planning and zoning and provides not only for the adoption of master plans, but also for zoning in accordance with an adopted master plan. The master plan of a community is a "standard that commands deference and a presumption of applicability," but should not be viewed as a "legislative straightjacket from which no leave can be taken." Nova Horizon v. City Council, Reno, 105 Nev. 92, 96, 769 P.2d 721, 723 (1989).

The master plan provided that the subject property was originally zoned R-E (Rural Estates), which permitted low density residential use and the raising of crops and of a limited number of animals for noncommercial purposes. Clark County Code § 29.10.010. Manufacturing is not permitted either expressly or by virtue of a conditional use permit in a district zoned R-E or R-U, and in order to conduct manufacturing (and more specifically operate a concrete/asphalt batch plant) on respondents' property, the property would have to be rezoned as M-2 (Industrial Without Dwellings), which expressly permits mixing plants for concrete and asphalt. Clark County Code § 29.42.010 (50). Union Pacific had twice previously tried to get the subject property rezoned for manufacturing and had twice failed. In 1989, Union Pacific requested that the property be rezoned as M-2, and the request was denied. In 1991, Union Pacific requested that the property be

rezoned as M-1 (Light Manufacturing) and M-D (Designed Manufacturing), and that request was also denied.[6]

Apparently, due to their failures to have the property rezoned for manufacturing uses, respondents chose the present course of applying for a "down-zone," requesting a conditional use permit for a sand and gravel pit, and also requesting a variance for the batch plants. The district judge sanctioned this conduct, stating that

> It may have been sleight of hand, but it's not unlawful. You could argue that it's good lawyering and I think we can ascribe to that, but it was done in a clever manner. It was successful and, as far as I can determine, is not illegal.

However, we conclude that the course chosen by respondents was an improper attempt to circumvent the master plan and that the Board's decision to grant the variance completely ignored the master plan, which expressly prohibited manufacturing on respondents' land.

Taken individually, the three requests made by the respondents were all minor changes which likely did not amount to a non-conforming use of the property. However, taken as a whole, the three requests amounted to a non-conforming use of the property because their effect would have been to allow manufacturing in a district which expressly forbids manufacturing. Because respondents' goal was to manufacture concrete and/or asphalt on the property, they should have requested that the property be rezoned to allow that type of manufacturing.[7]

Additionally, by evaluating respondents' three requests separately and by permitting the manufacturing use, the Board completely ignored the master plan. The Board permitted respondents

---

[6]Both times manufacturing zoning was requested, Union Pacific proceeded on its own because at those times Inland Properties, Inc. held no ownership interest in the property.

[7]An application for rezoning requires the submission of nine separate reports addressing the impact of the rezoning on the surrounding area. Clark County Code § 29.68.025 (E). Additionally, non-conforming use requests, i.e., zone changes, are required to have at least one public hearing before the Planning Commission and at least one public hearing before the Board of County Commissioners. Clark County Code § 29.68.030. By cloaking their request for a zone change as one for a variance in conjunction with a conditional use, respondents received three major benefits. First, they were not required to submit the nine impact reports to the Planning Commission and the Board of County Commissioners, thereby lessening their burden of production. Second, they avoided having to request manufacturing zoning from the Planning Commission, which had twice before denied respondents' same request. Third, they avoided the public hearing in front of the Planning Commission which would have exposed their plan to greater scrutiny both by the Planning Commission and by citizens.

to do indirectly what they could not accomplish directly, i.e., manufacture concrete and asphalt in a zoning district which expressly forbids manufacturing. Such a decision amounts to spot zoning and provides no deference to the master plan in violation of this court's ruling in Nova Horizon v. City Council, Reno, 105 Nev. 92, 96, 769 P.2d 721, 723 (1989). Therefore, we conclude that the Board erred in granting the variance and that the Board's decision must be overturned.

*Award of Attorney's Fees*

Appellant argues that it is entitled to attorney's fees pursuant to NRS 278.0233[8] because it had an interest in real property which might be damaged by the Board's actions. However, the statute indicates that relief in the form of actual damages is available only to the party which submitted the application requesting an improvement or change of use on its property and only after the responsible agency acts arbitrarily in imposing some type of restriction on the use of the property in excess of the agency's statutorily derived powers. The statute does not provide for relief in the form of actual damages for a party challenging the application, if indeed the agency acted arbitrarily in granting the application. Therefore, appellant is not entitled to attorney's fees pursuant to NRS 278.0233.

## CONCLUSION

We conclude that the district court erred in denying appellant's petition for a writ of mandamus for three reasons. First, respondents did not provide substantial evidence to the Board that a hardship or difficulty existed which justified the granting of a variance to allow the concrete/asphalt batch plant. Second, the Clark County Code does not permit accessory uses, buildings, and structures incidental to a conditional use in areas zoned R-U.

---

[8]NRS 278.0233 states:

Any person who has a right, title, or interest in real property, and who has filed with the appropriate state or local agency an application for a permit which is required by statute or an ordinance, resolution or regulation adopted pursuant to NRS 278.010 to 278.630, inclusive, before that person may improve, convey or otherwise put the property to use, may bring an action against the agency to recover actual damages caused by:

(a) Any final action, decision or order of the agency which imposes requirements, limitations, or conditions upon the use of the property in excess of those authorized by ordinances, resolutions, or regulations adopted pursuant to NRS 278.010 to 278.630, inclusive, in effect on the date the application was filed and which:

(1) Is arbitrary or capricious; or

(2) Is unlawful or exceeds lawful authority.

Third, the Board of County Commissioners erred by not providing deference to the master plan. Therefore, the order of the district court denying appellant's petition for a writ of mandamus is reversed, and this matter is remanded to the district court with instructions to reverse the Board's decision to grant the variance. We also conclude that appellant is not entitled to attorney's fees.

STEFFEN, C. J., and YOUNG, J., concur.

SHEARING, J., with whom SPRINGER, J., joins, dissenting:

I would affirm the judgment of the district court denying the petition for writ of mandamus and upholding the decision of the Clark County Board of Commissioners.

In 1968, this court stated:

> The days are fast disappearing when the judiciary can look at a zoning ordinance and, with nearly as much confidence as a professional zoning expert, decide upon the merits of a zoning plan and its contribution to the health, safety, morals or general welfare of the community. Courts are becoming increasingly aware that they are neither super boards of adjustment nor planning commissions of last resort.

Coronet Homes, Inc. v. McKenzie, 84 Nev. 250, 255-56, 439 P.2d 219, 223 (1968). In 1996, decisions regarding land use are much more complicated in the increasingly urban environment of Clark County. This court must be very circumspect about interfering with the decisions made by those who are selected by the people of Clark County to make those decisions.

I agree with the majority that a grant or denial of a variance is a discretionary act which this court must uphold if the discretion is not abused. Nevada Contractors v. Washoe County, 106 Nev. 310, 314, 792 P.2d 31, 33 (1990). I believe that there was substantial evidence presented to support the grant of the variance under Clark County Code Section 29.66.030 and that the Clark County Board of Commissioners did not abuse its discretion.

Section 29.66.030 authorizes the Commission to grant a variance to relieve a property owner from the zoning regulation when "such regulation . . . would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardships, upon, the owner of such property." The plot plans showing the long, narrow shape of the property abutting the railroad tracks and the photographs showing the railroad tracks, the tower, the gravel pit and the existing structures on the other side of the railroad tracks, together, make it clear that the property is not suitable for residential zoning. The photographs alone testify to the "exceptional practical difficulties," and the "exceptional and

undue hardships," in requiring the owner to keep the land for residential use.

The complainants did not even raise the issue of lack of difficulty or hardship. They raised numerous other objections which the majority of the Commissioners obviously thought had been adequately addressed by the property owner and by the conditions to the variance imposed by the Commission. I do not believe that this court can conclude as a matter of law that the Clark County Board of Commissioners abused its discretion.

I disagree most emphatically that any adverse inferences should be drawn from the fact that M-2 zoning for the property had previously been turned down or that three separate requests led to the grant of the variance. Changing an R-1 zoning to a zoning permitting manufacturing is quite different from granting a variance on a particular parcel that has unique problems. Granting an M-2 zoning could lead to a change in the entire character of the area, while a variance on a parcel is unlikely to do so.