COUNTY OF CLARK, NEVADA, JAY BINGHAM, PAUL J. CHRISTENSEN, KAREN HAYES, YVONNE ATKINSON GATES, DON SCHLESINGER, THALIA DONDERO, BRUCE WOODBURY, COUNTY COMMISSIONERS, APPELLANTS, v. FRED M. DOUMANI, SR., CINDY DOUMANI, FRED M. DOUMANI, JR., AND RONALD M. DOUMANI, RESPONDENTS.

No. 26126

January 22, 1998                                    952 P.2d 13

---

[Rehearing denied March 23, 1998]

*Stewart L. Bell,* District Attorney, *Johnnie B. Rawlinson,* Chief Deputy District Attorney, Clark County, for Appellants.

*Nitz, Walton & Hammer,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

In 1985, respondents bought approximately 9.34 acres of real property in Clark County. On November 19, 1991, a master plan for developing that portion of Clark County was adopted by the Clark County Board of Commissioners ("the Board"). Under the master plan, the planned use for respondents' property was designated R-2 (Medium Density Residential District), which permits construction of up to eighteen dwelling units per gross acre. Currently, respondents' property is zoned R-E (Rural Estates Residential District). R-E zoning limits development to two dwelling units per gross acre and minimum lot sizes of 20,000 square feet per family dwelling. Clark County Code § 29.10.050. In early 1993, respondents applied to the Board for a zone change from R-E to R-2 and submitted a plan to build twenty four-plex townhouses on the property, a total of eighty units with a density of approximately 8.56 dwelling units per gross acre. Respondents also submitted applications for a conditional use permit and variances necessary to accommodate the proposed plan. At that time, the property to the north of respondents' parcel contained an apartment complex with a density of approximately eighteen units per acre, and the property to the east contained an apartment complex with a density of approximately fourteen units per acre. The property to the south of respondents' parcel contained single family residences at a density of four units per acre, and the property to the west was zoned R-E.

On July 7, 1993, respondents' petition was heard by the Board. At the hearing, the Board's zoning staff recommended approval of the project, with the exception of three of the variance requests, noting that the application was for less than half of the density allowed under the master plan. The zoning staff pointed out, however, that the high school and middle schools in the area were already over capacity and that most of the property in the area has been developed under R-E zoning as rural estate homes. The

Town Board recommended denial of the application based on traffic and neighborhood protests. The Board received fifteen letters and a petition containing 106 signatures opposing the project, as well as a petition containing 93 signatures of nearby residents in support of the project.

Five homeowners testified at the hearing that they opposed the project because it would decrease their home values and because they enjoy the current rural atmosphere. Respondents testified that the project was in conformity with the use of the surrounding properties. At the conclusion of the hearing, County Commissioner Bruce Woodbury stated that he opposed the application because he felt that the proposed use would be incompatible with the surrounding neighborhood and that single-family residences would be the only appropriate use for the property. At the conclusion of Woodbury's statements, the Board voted unanimously to deny all of respondents' applications for the proposed project.

Respondents' representative received written notice of the Board's decision by letter dated July 16, 1993. On August 9, 1993, respondents filed a complaint and petition for a writ of mandamus to obtain judicial review of the Board's denial of rezoning, the conditional use permit, and the variances necessary for the development of the project.

On January 20, 1994, appellants filed a motion to dismiss the complaint and petition for a writ, contending that respondents' action was barred by the twenty-five day statute of limitations set forth in NRS 278.0235. Appellants asserted that the Board's final decision was made on July 7, 1993, the date of the hearing; thus, respondents' August 9, 1993 complaint and petition, filed 33 days later, was untimely. Respondents opposed the motion, contending that the complaint and petition was timely filed within 25 days of the written notice of the decision mailed to respondents' representative on July 16, 1993. On March 3, 1994, the district court entered an order denying appellants' motion to dismiss, concluding that the application of the statute of limitations for actions brought under NRS 278.0235 is ambiguous or unclear, but that no evidence had been presented to show that the statutory period ran before respondents' complaint and petition was filed.[1]

Respondents filed an amended complaint and application for a writ of mandamus on March 23, 1994, and a petition for the

---

[1]NRS 278.0235 applies to an "action or proceeding . . . commenced for the purpose of seeking judicial relief or review" from a final agency decision. Such language appears to include petitions for writs of mandamus as well as complaints arising from agency decisions. *See* NRS 34.300 (provisions of NRS relative to civil actions are applicable to and constitute the rules of practice in mandamus proceedings).

issuance of a peremptory writ of mandamus on April 25, 1994. Respondents asserted that the Board's denial of respondents' applications for the project was unsupported by substantial evidence in the record, and thus constituted an abuse of discretion.

On May 23, 1994, the district court conducted a hearing on respondents' petition. Subsequently, on June 21, 1994, the district court issued an order granting respondents' petition for a writ of mandamus. The district court found that the zone change and conditional use permit are in complete harmony with applicable provisions of the master plan, as approved and adopted by the Board on November 19, 1991. The district court further found that some of the opposition to the project was based on the misunderstanding that the project would include 320 units, rather than 80 units.

The district court concluded that the master plan establishes a standard which is entitled to deference and carries a presumption of applicability and that no evidence had been presented to show that the project would threaten the health, safety, morals or general welfare of the county's residents. The district court further concluded that the Board's denial of the zone change and conditional use permit (1) was unsupported by substantial evidence and resulted in an unreasonable, arbitrary and capricious deprivation of a legitimate use of respondents' property; (2) was an abuse of discretion because it failed to give the master plan the deference and presumption of applicability to which it was entitled; (3) had no substantial relationship to the public health, safety, morals and/or general welfare; (4) was inconsistent, given the zoning and uses that exist on land to the north and east; (5) was an unnecessary and unreasonable interference with respondents' private business and lawful occupations; and (6) and was an attempt by the Board to implement an inappropriate, de facto amendment to the master plan.

Accordingly, the district court issued a peremptory writ of mandamus requiring appellants to approve respondents' applications for rezoning and a conditional use permit, and remanding the application for variances to the Board for reconsideration in light of the district court's decision. This appeal followed.

*Whether respondents' action was timely filed pursuant to NRS 278.0235*

Appellants contend that respondents' complaint and petition challenging the Board's decision was untimely filed pursuant to NRS 278.0235 because it was filed thirty-three days after the July 7, 1993 hearing. Appellants contend that this court's interpretation of an analogous statute in League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 93 Nev. 270, 563 P.2d 582

(1977), indicates that judicial review must be sought within 25 days of the hearing.

NRS 278.0235 provides in pertinent part:

> No action or proceeding may be commenced for the purpose of seeking judicial relief or review from or with respect to any final action, decision or order of any governing body, commission or board . . . unless the action or proceeding is commenced within 25 days after the date of filing of notice of the final action, decision or order with the clerk or secretary of the governing body, commission or board.

This court has not previously considered what constitutes "notice" of a board's decision for purposes of triggering the twenty-five day statute of limitations under NRS 278.0235. In *League to Save Lake Tahoe,* this court analyzed what constitutes a "final action" under former NRS 278.027 (providing for judicial review of grants or denials of special use permits or variances). Former NRS 278.027 provided that judicial relief with respect to a final action of any governing body must be commenced "within 25 days from the date of the filing of notice of such final action." This court stated that "[i]f agency review . . . does not occur, then the action of [the county] is the 'final action' and judicial review, if desired, must be sought within 25 days thereafter." *Id.* at 274, 563 P.2d at 584. This statement suggests that final action and notice may be concurrent, but that issue was not squarely before the court.

Under the statute applicable in this case and the statute applicable in *League to Save Lake Tahoe,* the legislature chose to specify that the limitations period runs from the date that notice of the final action is filed, rather than from the action itself. This suggests that something more than the decision itself is required; otherwise, such language is superfluous. "No part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided." Paramount Ins. v. Rayson & Smitley, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970). We therefore conclude that the limitation period does not begin to run when a final decision is rendered. Rather, the limitation period begins to run only when notice of the final decision is filed. To the extent that *League to Save Lake Tahoe* can be read as inconsistent with this conclusion, it is overruled.

Alternatively, appellants contend that the Board's decision was filed with the clerk on the date of the hearing pursuant to NRS 278.0235 because a deputy clerk was present to record and note the Board's decision. In other words, appellants assert that statu-

tory notice was filed with the clerk on the date of the hearing. We disagree with appellants' position.

On appeal, questions of statutory construction are considered independently, and no deference is given to the district court's conclusion. *See, e.g.,* Grand Hotel Gift Shop v. Granite St. Ins., 108 Nev. 811, 815, 839 P.2d 599, 602 (1992) (questions of law are reviewed de novo). The rules of statutory construction are straightforward. "It is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act." McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 440 (1986). " 'Where the language of a statute is plain and unambiguous . . . there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' " Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990) (quoting In re Walter's Estate, 60 Nev. 172, 183-84, 104 P.2d 968, 973 (1940)).

Giving the words of the statute their plain meaning, the mere presence of the Board's clerk at the hearing for the purpose of recording the Board's decision does not constitute filing of notice of the decision with the clerk. Rather, NRS 278.0235 contemplates that something more must be done. We conclude that "filing of notice of the final action" under NRS 278.0235 is accomplished when someone or some entity provides separate, written notice of the final action to the secretary or clerk of the governing body, commission or board.

Further, although the statute does not expressly require that notice be given to the applicant, to give effect to the statute of limitations the applicant must be informed that notice of the final action was filed with the clerk or secretary. Thus, any notice filed with the clerk or secretary should also be forwarded to the applicant and should include the date on which the notice was filed with the clerk or secretary. Because the record discloses no filing of written notice of the final action with the Board's secretary in this matter, it appears that the limitations period never began to run. Accordingly, the district court did not err in concluding that respondents' action and proceeding were timely filed under NRS 278.0235.

*Whether the Board's decision was supported by substantial evidence in the record*

Appellants next contend that the Board's zoning decision is entitled to a presumption of validity, and that the Board's decision

is supported by substantial evidence in the record. Appellants contend that the existence of a master plan does not divest the Board of its discretion to determine whether a proposed development is appropriate for a given area.

A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, NRS 34.160, or to control an arbitrary or capricious exercise of discretion. *See* Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). We review the district court's grant or denial of a writ petition under an abuse of discretion standard.[2] *See* City of Reno v. Harris, 111 Nev. 672, 895 P.2d 663 (1995); Perry v. State Dep't of Corrections, 694 So. 2d 24 (Ala. Civ. App. 1997); Hicks v. Gravett, 849 S.W.2d 946 (Ark. 1993); Wallace v. Dept. of Fish, Wildlife & Parks, 889 P.2d 817 (Mont. 1995); Joshua C. v. Western Hgts. Ind. Sch. Dist., 898 P.2d 1324 (Okla. Ct. App. 1995).

The grant or denial of a rezoning request is a discretionary act. *See* McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961) (stating that under the police power, zoning is a matter within sound legislative discretion and such legislative action must be upheld if the facts do not show that the bounds of that discretion have been exceeded). If a discretionary act is supported by substantial evidence, there is no abuse of discretion. Enterprise Citizens v. Clark Co. Comm'rs, 112 Nev. 649, 918 P.2d 305 (1996). Further, a presumption of validity attaches to local zoning enactments and amendments. *See* McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961).

In *Enterprise Citizens* this court stated that

> NRS 278.250 governs many aspects of planning and zoning and provides not only for the adoption of master plans, but also for zoning in accordance with an adopted master plan. The master plan of a community is a "standard that commands deference and a presumption of applicability," but

---

[2]Previously, we stated that we would review a district court decision granting or denying a writ petition for an abuse of discretion only if the district court has taken additional evidence from that heard by the commission or council. *See* City of Reno v. Harris, 111 Nev. 672, 895 P.2d 663 (1995). Otherwise, we would focus on the commission or council's decision and examine it for an abuse of discretion. *See Harris,* 111 Nev. at 677, 895 P.2d at 666. We see no reason, however, to make a distinction in the standard of review based on whether the district court has taken additional evidence. Since the district court has discretion to grant or deny a writ petition, all appeals from a district court grant or denial of a writ petition will be reviewed under an abuse of discretion standard.

should not be viewed as a "legislative straightjacket from which no leave can be taken."

*Enterprise Citizens,* 112 Nev. at 659, 918 P.2d at 311. Thus, although the Board's decision is entitled to a presumption of validity, the master plan is also entitled to deference.

The primary evidence presented at the hearing in opposition to the project consisted of fifteen letters of protest, a petition containing 106 signatures, testimony of five area homeowners, and Commissioner Woodbury's statement that the land was more suitable for single family homes. Additionally, the Town Board recommended denial of the request based on traffic and neighborhood protests, and it was noted that the middle school and high school in the area are well over capacity. Evidence presented supporting the project included testimony that the project was in conformance with the approved master plan, the Board zoning staff's approval of the project, a petition containing 93 signatures supporting the project, and respondents' own testimony.

It is undisputed that respondents were seeking approval of a zoning density that was not only in compliance with the master plan adopted by the Board in 1991, but was well below that already approved in the master plan. Further, the number of area residents opposing or supporting the proposed development was roughly equal. Finally, the surrounding properties on two sides of the proposed development were zoned and developed at a higher density, while the surrounding properties on the other two sides were zoned and being developed at a lower density.

We conclude that because the evidence presented in support of and in opposition to the proposed development was roughly equal, the district court did not abuse its discretion in determining that the Board abused its discretion by failing to give deference to the master plan and denying the rezoning request.

Accordingly, we affirm the district court's order granting respondents' petition.