596 A.2d 1156

**Philip R. DETWILER and Babette Detwiler, Appellants,**

**v.**

**ZONING HEARING BOARD OF LOWER SALFORD TOWN-SHIP and Lower Salford Township and Donald G. Miller and Mary P. Miller, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 8, 1991.

Decided Aug. 8, 1991.

598

Robert L. Brant, Jr., for appellants.

Kent H. Albright, for appellee and intervenor, Lower Salford Tp.

Before COLINS, and SMITH, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Philip and Babette Detwiler (Appellants) appeal an order of the Court of Common Pleas of Montgomery County which affirmed the decision of the Zoning Hearing Board of Lower Salford Township (Board), granting Donald and Mary Miller (Millers) a variance for the construction of a house.

The Millers own a lot,[1] consisting of approximately 2.8 acres, in Lower Salford Township and would like to construct a house thereon. The lot is located in an R–1A Residence District. According to the Township's zoning ordinance, single-family detached dwellings are permitted in R–1A Residence Districts, as long as the premises, with the dwelling, complies with the area, width, and yard regulations of Article VI, Section 164–28 of the Lower Salford Township Code (Code), which provides, *inter alia,* that both the front and rear yards must be at least seventy-five feet deep and that the side yards must be at least forty feet wide.

On March 28, 1989, the Millers filed an application with the Board in which they requested a variance from the seventy-five foot rear yard requirement so that they could build a house on their lot. It is the Millers' position that the imposition of the minimum front and rear yard setback

---

1. In actuality, the Millers own three contiguous lots. This appeal, however, concerns only one of those lots.

provisions, as applied to their lot,[2] completely negates any practical residential development because of the absence of any appreciable "building envelope"[3] within which a house of even the leanest proportions might be built.[4] As such, the Millers requested a variance for a reduction of the rear yard requirement from seventy-five feet to forty feet.[5]

Appellants live directly across the street from the Millers' lot. Appellants' house, a restored Mennonite dwelling, is listed on the National Register of Historic Places. Appellants challenged the Millers' request for a variance on the ground that it would adversely impact their property, which, they contend, "serves as an asset to the community because of its historic value."[6]

Despite Appellants' opposition, the Board granted the Millers' request for a variance, concluding that without the grant of a variance, the Millers' lot "could quite easily suffer the fate of terminal sterility." Board's Opinion, pp. 5–6. The Board further concluded that, in granting the Millers a variance, "there would appear to be no discernible adverse impact or consequence upon neighboring properties." *Id.* at 6.

On appeal, the trial court, without taking any additional evidence, affirmed the decision of the Board. In its opinion, the trial court discussed each of the five requirements that must be satisfied in order to grant a variance under Section

**2.** The Board found that the Millers' lot "is a somewhat irregularly shaped lot, rectangular and narrow in appearance ..." Board's Finding of Fact No. 5.

**3.** The "building envelope" is determined by subtracting the setback requirements from the actual boundary of the premises.

**4.** The front, rear, and side boundary lines of the Millers' lot measure 643.25 feet, 638.00 feet, 190.00 feet and 199.70 feet, respectively. In addition to the yard regulations found in Section 164–28 of the Code, the Millers' lot is also subject to a forty foot setback from the road on which it borders. *See* N.T., April 27, 1989 Hearing, pp. 10–11; Exhibit A–9. With all of the setbacks, the lot, absent a variance, would not permit any dwelling at all or, even if placed in the widest area of the lot, would only permit a dwelling of less than ten feet deep.

**5.** The Millers' proposed house measures fifty-eight feet long and forty-two feet deep.

**6.** Appellants' brief, p. 8.

910.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2, and then concluded that the Millers' request satisfied each requirement. This appeal followed.[7]

Pursuant to Section 910.2 of the MPC, five requirements must be met before a variance may be granted. To establish a right to a variance, a landowner must show that the effect of a zoning ordinance is to burden property with an unnecessary hardship that is unique to the property; that the hardship was not self-inflicted; that the granting of the variance will not have an adverse impact on the public health, safety and welfare; and that the variance sought is the minimum variance that will afford relief. *Cope v. Zoning Hearing Board of South Whitehall Township,* 134 Pa.Commonwealth Ct. 236, 578 A.2d 1002 (1990).

Appellants do not dispute that the unique configuration of the Millers' lot makes the lot unusable as a building lot, absent a variance. They do contend, however, that the fact that the lot is unusable as a building lot is not an unnecessary hardship for the Millers. It is Appellants' position that since the Millers' lot can be and, in fact, is currently being used for agricultural uses, which are permitted in R–1A Residence Districts as a matter of right, the variance should have been denied. We disagree.

According to Section 910.2(a)(2) of the MPC, 53 P.S. § 10910.2(a)(2), a board may grant a variance where, *inter alia,* it is necessary to enable a reasonable use of the property. In this case, the permitted uses for property located within an R–1A Residence District are single-family detached dwellings and agricultural. Section 164–27 of the Code. Although the Code fails to provide a description of what uses are considered to be "agricultural," it does

7. In zoning cases, where the trial court does not take additional evidence, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Feldman v. Zoning Hearing Board of the City of Pittsburgh,* 89 Pa.Commonwealth Ct. 237, 492 A.2d 468 (1985).

provide a definition of the term "agriculture." That word is used in the Code to mean "[t]he cultivating of the soil and the raising and harvesting of the products of the soil, including, but not by way of limitation, nursery, horticulture and forestry." Section 164–5 of the Code.

At the hearing before the Board, the following testimony was elicited from Mr. Miller regarding the uses and characteristics of his lot:

Q. What is the current use of the property?

A. One of the local farmers takes the hay off it and I use it for some farm animals. I guess he sells it to other farms.

\*     \*     \*     \*     \*     \*

Q. ... What are the physical aspects of the property?

A. There are a couple of big trees on it. There is an old foundation, I guess an old barn from what Mrs. Brown told me, who used to own it. There is a fence line around the perimeter of the property, most of it's [sic] fallen down pretty badly now. It's held up by vines in the back....

N.T., April 27, 1989 Hearing, pp. 7–8.

Initially, we note that it could be argued that the activities which are currently occurring on the Millers' lot do not pertain to "agriculture" as that word is defined by the Code. In any event, even if the lot is currently being used for some limited agricultural uses, it would be unreasonable to force the Millers to continue that use. The size of the Millers' lot as well as its physical characteristics are such that, to limit its use to agricultural purposes, would, for all intents and purposes, render the lot practically valueless. That fact, in and of itself, constitutes "unnecessary hardship." *See Canter v. Township of Abington Zoning Hearing Board,* 43 Pa.Commonwealth Ct. 132, 401 A.2d 1240 (1979).

Additionally, in evaluating hardship, the use of adjacent and surrounding land is unquestionably relevant. *Valley View Civic Association v. Zoning Board of Adjust-*

ment, 501 Pa. 550, 462 A.2d 637 (1983). As noted by the trial court, the district in which the Millers' lot is situated is zoned *residential*. Indeed, from the record, it appears that the majority of the neighborhood surrounding the Millers' lot is residential, rather than agricultural. As such, it would not have been unreasonable for the Board to infer that the Millers' lot, so situated, would be undesirable and, hence, unmarketable for agricultural uses, thereby causing the lot to suffer the fate of terminal sterility.

Finally, we wish to emphasize that the use which the Millers desire for their lot, a single-family dwelling, is a permitted use within an R–1A Residence District. They are not seeking a use variance for their property, only a dimensional one. With regards to dimensional variances, we have held on numerous occasions that where, as here,[8] the yard requirements make the construction of a residence impossible, an unnecessary hardship results to the landowner. *See John R. Greene Associates v. Zoning Hearing Board of Lower Allen Township*, 56 Pa.Commonwealth Ct. 605, 426 A.2d 175 (1981); *Schaaf v. Zoning Hearing Board of Edinboro*, 22 Pa.Commonwealth Ct. 50, 347 A.2d 740 (1975); *Jacquelin v. Horsham Township*, 10 Pa.Commonwealth Ct. 473, 312 A.2d 124 (1973).

Appellants next argue that the Millers' asserted hardship is self-inflicted because they had advance knowledge of the zoning district in which their lot is located before they purchased it. Again, we must disagree.

A landowner's knowledge of zoning requirements prior to the purchase of property is not sufficient, in and of itself, to bar the grant of a variance. *Franklin Towne Realty, Inc. v. Zoning Hearing Board of the Borough of Franklin Park*, 37 Pa.Commonwealth Ct. 632, 391 A.2d 63 (1978). Hardship is self-inflicted only where a landowner has paid a high price for the property because he assumed that a variance which he anticipated would justify that

8. Here we find, as a matter of law, that the cumulative impact of the setback requirements make the construction of a residence so unreasonable as to be impossible. *See* n. 4.

price. *Gro Appeal*, 440 Pa. 552, 269 A.2d 876 (1970). Here, Appellants do not allege that the Millers paid a high price for their lot in anticipation of a dimensional variance. Indeed, the fact that the lot has been in the Miller family for some time[9] suggests otherwise.

Moreover, as noted by the Board, the Millers' hardship was not self-inflicted since their lot, from its creation in 1960, has retained its integrity as an unimproved lot whose dimensions have remained unaltered. As such, the Millers have not caused, through any action of their own, the unique configuration of their lot.

Furthermore, although the Millers do own lots which are adjacent to the lot in question, these lots, even if merged with the lot in question, would not aid in fulfilling the setback requirement.[10] The only lot that could remedy the Millers' dimensional problem is the one located behind their lot. At the hearing before the Board, Mr. Miller was questioned regarding that lot:

> THE CHAIRMAN: I have a question or two here. Mr. Miller, have you tried to acquire any land to the rear of this property from the owner ...? Have you tried to acquire land so this could make the footprints bigger so that you would have your rear yard?
>
> MR. MILLER: At one point I talked to the owner about it. He didn't seem too interested in selling.

N.T., April 27, 1989 Hearing, pp. 13–14. Accordingly, we agree with the Board and the trial court that the Millers' hardship was not self-inflicted.

■ Finally, Appellants argue that granting the Millers a variance will have an adverse impact on the public health, safety and welfare in that it will cause a house to be built

---

9. The lot was first owned by Mr. Miller's uncle and immediately thereafter by Mr. Miller's aunt and father, respectively.

10. For this reason, we find that the trial court committed harmless error when it misconstrued the location of the Millers' lot in relation to their other lots by stating that the lot in question was in the center of the Millers' three adjoining lots when, in fact, it is located at the eastern end.

directly across the street from their property, which is on the National Register of Historic Places. From our reading of the record, however, Appellants submitted no evidence to support their bald statement. It appears that Appellants simply do not want a house built across the street from their property. Specifically, the record reflects the following:

MR. ALBRIGHT: Are you saying you would not be concerned if the house were moved down?

MR. DETWILER: I won't complain as much.

MR. ALBRIGHT: Well would you still be opposed to the application?

MR. DETWILER: No, I don't think so. As long as it's out of the way. It makes—it's probably unhandy for Glen and Mary to have a house that's lopsided on the lot. But let me bluntly respond to you, Mr. Albright. I don't want it across the street from my house.

\* \* \* \* \* \*

MR. GIFFORD: How exactly is this proposal going to adversely impact you since the front yard, which separates the house from your house, is going to comply?

MR. DETWILER: I think the location of the house on that ground will adversely impact the property that I own.

MR. GIFFORD: I'm saying how?

MR. DETWILER: By being there.

MR. GIFFORD: What will it do to your property is my question?

MR. DETWILER: It will place a structure across the street from my property which since the early seventeen hundreds as far as I know has been located fifty feet from the road. If my property were one hundred fifty feet from the road I don't think I would have that problem. But I bought that property and it's been there

long before any of the circumstances involved in this application.

N.T., April 27, 1989 Hearing, pp. 27–28, 32–33. From the above-quoted testimony, it is evident that the interest which Appellants seek to protect in this suit is their own, rather than the public's.

Moreover, like the trial court, we cannot see how there would be an injury to the historic status of Appellants' house if the Millers constructed their house in accordance with the variance as granted. This is especially true in light of the fact that the Millers sought a variance with regard to their rear yard setback and Appellants' property is located across the street from the *front* of the Millers' lot.

Having determined that the Board did not abuse its discretion or commit an error of law in granting the Millers a variance,[11] the decision of the trial court is hereby affirmed.

### ORDER

AND NOW, this 8th day of August, 1991, the decision of the Court of Common Pleas of Montgomery County in the above-captioned case is hereby affirmed.

---

**11.** Appellants do not dispute that the rear yard variance granted to the Millers was the minimum variance that would afford relief.