**Bruce W. PATULLO, Appellant,**

v.

**ZONING HEARING BOARD OF the TOWNSHIP OF MIDDLETOWN.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 1997.

Decided Oct. 9, 1997.

---

Kyle A. Burch, Media, for appellant.

Donald T. Petrosa and Susan E. Line Boswell, Media, for appellee, Township of Middletown.

Before SMITH and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Bruce W. Patullo (Patullo) appeals from an order of the Court of Common Pleas of Delaware County which affirmed the decision of the Zoning Hearing Board of Middletown Township (Board) denying his application for a special exception and a variance.

Patullo is the owner of the subject property located at 602 Chester Creek Road, Middletown Township (Township), Delaware County, along the eastern bank of the Chester Creek. The property consists of 3.18 acres improved with a detached, one and one-half story, single-family dwelling, two detached sheds and a concrete shed pad.

The property is located within the R–1 Residential zoning district, where detached single-family dwellings and related accessory uses are permitted. The entire property is also within the F–2 One Hundred Year Floodplain District, a subdistrict of the Flood Plain Conservation District of the Township, where a residential use is not permitted under Section 2606 of the Middletown Township Zoning Ordinance (Ordinance). The current residential use of Patullo's property is permitted as a nonconforming use because the house was built in 1953 prior to the enactment of the Ordinance regulating the uses in the F–2 district.

In February 1996, Patullo filed an application for a special exception and a variance with the Board following the Township zoning officer's denial of his application for a building permit for construction of a garage on his property. Patullo proposed to construct a 40–foot by 40–foot, 18–foot high, one and one-half story barn-style garage, a bituminous driveway and a related parking area. The plan submitted to the Board showed that the footprint of the proposed structure is approximately equal to the footprint of the existing house and flagstone patio. Patullo also proposed to deposit fill material in the area of the proposed building to meet the requirement of Section 2607.1.C.b.(2) of the Ordinance that the ground level be elevated to a height of 1.5 feet above the 57–foot limit of the one hundred year flood level.

Patullo currently owns seven classic or antique automobiles for his personal use and intends to use the proposed garage to store up to eleven automobiles and as a work area. Patullo stated that mechanical repairs of the automobiles, not involving any body work or painting, would be done in the proposed garage, and that no flammables would be stored in the garage, except gasoline, motor oil and lubricants contained in the automobiles.

The Board found that the proposed garage does not constitute an accessory building or use incidental to and customarily conducted in connection with a residential use permitted in the R–1 zoning district. The Board further found that the proposed deposit of the fill material would increase the property's flood elevation level by 0.1 foot and result in a horizonal increase of the one hundred year flood plain along Knowlton Road by one foot.

Finally, the Board found that ·the proposal failed to comply with the regulations prohibiting the storage of flammable or toxic material and petroleum products and the deposit ·of fill material in the F–2 district.

The Board concluded that the proposed building would have an adverse effect on the health, safety and general welfare of the surrounding area, and that Patullo failed to establish his entitlement to ᴜ special exception and a variance. The Board accordingly denied the application. On appeal, the trial court affirmed the Board's decision.[1]

Patullo first contends that the proposed garage constitutes "a private garage" or "a private recreational facility," which is specifically permitted as an accessory use in the R–1 zoning district under Section 501.B of the Ordinance.[2] Patullo argues that because the Ordinance does not limit the number of vehicles permitted in an accessory private garage, the size of the proposed garage is irrelevant in determining whether the proposed use is permitted as an accessory use in the R–1 zoning district. Patullo also challenges the Board's conclusion that the proposed garage does not constitute an accessory private garage because it is not customary for a residential property owner to have a hobby of owning and collecting classic automobiles.

In so contending, however, Patullo disregards the undisputed fact that his property is located not only within the R–1 zoning district, but also within the F–2 district. Section 2606.A.3 permits in the F–2 zoning district "[a]ccessory uses, *which do not in-* *volve structures,* customarily incidental to the permitted use." (Emphasis added.) Patullo acknowledges that a residential use is not permitted in the F–2 zoning district and that his current use of the property therefore exists as a nonconforming use. Thus, even assuming that the proposed garage is permitted in the R–1 zoning district as an accessory use customarily incidental to the residential use, to expand such nonconforming residential use in the F–2 district, Patullo was required to obtain a special exception pursuant to Section 2606.E.1.d of the Ordinance, which provides:

> E. *Existing Nonconforming Structures and Uses.*
>
> 1. Existing structures and land uses within the Floodplain Conservation District which do not conform to the requirements of this section may continue but must comply with the following:
>
> . . . .
>
> d. The expansion, enlargement or the substantial modification, alteration, repair, reconstruction or improvement of an existing structure or use located in the F–2 or F–3 Subdistricts must be authorized as a special exception by the Zoning Hearing Board and must comply with the requirements of Section 2607.

To establish entitlement to a special exception, Patullo had the burden of establishing that his proposed use complied with all general and specific standards set forth in Section 2607 of the Ordinance. Section 2607.A.1.[3] Section 2607.C.1.b.(1) provides

---

1. This Court's scope of review in zoning cases, where, as here, the trial court did not take any additional evidence, is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Teazers, Inc. v. Zoning Board of Adjustment of City of Philadelphia,* 682 A.2d 856 (Pa.Cmwlth.1996). The Board abuses its discretion, only if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support its conclusion. *Id.*

2. Section 201 of the Ordinance defines "an accessory use" as "[a] use which is clearly incidental to and customarily conducted in connection with the particular use of the parcel and on the same lot as a principal use." "A private garage" is defined as "[a]n accessory use or part of a permitted principal building used for the storage of motor vehicles owned and used by the owner, residents, employees or visitors of such permitted principal building." *Id.*

3. Under the doctrine of natural expansion, a nonconforming use may be extended in scope, as the business increases in magnitude, over ground occupied by the owner of the businesses at the time of the enactment of the zoning ordinance. *Township of Chartiers v. William H. Martin, Inc.,* 518 Pa. 181, 542 A.2d 985 (1988); *Appeal of Lester M. Prange, Inc.,* 166 Pa.Cmwlth. 626, 647 A.2d 279 (1994). However, the doctrine of natural expansion is inapplicable to nonconforming residential uses. *Tantlinger v. Zoning Hearing Board of South Union Township,* 103 Pa.Cmwlth.

that "[n]o ... special exception shall be granted for any proposed use, development or activity that will cause *any* increase in flood levels during the one-hundred-year flood." (Emphasis added.) Patullo does not challenge the Board's finding that the proposed deposit of the fill material on the construction site would increase the property flood elevation by 0.1 foot and the area of the flood plain along Knowlton Road by one foot.

The Ordinance requires the Board to ensure, in considering an application for a special exception, that the proposal "[w]ill be consistent with the statement of the purpose articulated for the district in which the use is proposed." Section 3312.A.2 of the Ordinance. The regulations applicable to the Flood Plain Conservation District were enacted, *inter alia,* "to eliminate or minimize the harmful effects of flooding" and to permit only uses which "will not impede the flow of flood waters or otherwise create situations harmful to life or property." Section 2601.A and C.9.

■ As the Board concluded, the increased flood level caused by the construction of the proposed garage would have the adverse effect on the public welfare and contravene the stated purposes of the F–2 district. Since Patullo failed to establish that his proposal complied with all of the required standards for granting a special exception, the Board's refusal to grant a special exception was proper.

Patullo's proposal also failed to comply with the following regulations applicable to the F–2 district: (1) Section 2606.A.4.c, prohibiting storage of any material which would float if inundated, any flammable or toxic materials, any other material which would degrade or pollute the stream or cause damage if inundated or otherwise released to the stream; (2) Section 2606.A.4.d.(*l* ), prohibiting under any circumstances "petroleum products (gasoline, fuel oil, etc.)"; and (3) Section 2606.A.4.e, prohibiting a deposit of fill material. Hence, Patullo was required to obtain a variance from these regulations for the proposed garage.[4]

■ To establish entitlement to a variance, an applicant must prove all of the following: (1) the zoning ordinance imposes unnecessary hardship resulting from the unique physical circumstances or conditions of the property, as distinguished from hardship arising from the impact of the zoning regulation on the entire district; (2) because of such physical circumstances or conditions, there is no possibility that the property can be developed for a reasonable use in strict conformity with the zoning ordinance; (3) the alleged hardship is not self-inflicted; (4) the requested variance will not destroy the character of the neighborhood; and (5) the requested variance represents the least possible modification of the zoning ordinance. Section 3405 of the Ordinance; Section 910.2 of the Pennsylvania Municipalities Planning Code.[5] *The reasons for granting a variance*

73, 519 A.2d 1071 (1987). *See also Sico v. Indiana Township Zoning Hearing Board,* 166 Pa.Cmwlth. 321, 646 A.2d 655 (1994) (the landowner was not entitled to increase the size of the horse stable on his property without obtaining a variance, where the property had not been used for business purposes).

4. Patullo argues that Section 2607.C.1.b(2), which requires that any new construction or substantial improvement to an existing structure have the lowest floor elevated to 1.5 feet above the one hundred year flood level, is ambiguous in light of Section 529 of the Township Building Code, and that therefore, he is not required to deposit the fill material to meet Section 2607.-C.1.b(2). Section 529 of the Building Code provides:

New construction and the substantial improvement to existing buildings and structures

that fully enclose areas below the lowest floor that are usable solely for parking of vehicles, building accessories, or storage in an area other than a basement, and which are subject to flooding, shall be designed to automatically equalize hydrostatic flood forces on exterior walls by allowing for the entry and exit of flood waters.

Patullo's argument is without merit. Patullo recognizes in his zoning application that Section 101(C)(1) and (2) of the Building Code also requires that the lowest floor level should be 1.5 feet above the one hundred year flood level. Further, Section 529 of the Building Code deals with construction methods applicable only where the construction is permitted by the provisions of the Ordinance.

5. Act of July 31, 1968, P.L. 805, *as amended,* added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

must be substantial, serious and compelling. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). An applicant's burden is a heavy one, and a variance should be granted sparingly and only under exceptional circumstances. *Isaacs v. Wilkes–Barre City Zoning Hearing Board,* 148 Pa.Cmwlth. 578, 612 A.2d 559 (1992).

■ Patullo asserts that the location of his property in the F–2 district constitutes unique physical characteristics which prevents him from using his property complying with the requirements of the Ordinance. To establish the physical circumstances of a property justifying a grant of variance, however, the owner must demonstrate that such circumstances are unique or peculiar to the property in question, and not a condition common to the neighborhood or zoning district. *Larsen v. Zoning Board of Adjustment of City of Pittsburgh,* 543 Pa. 415, 672 A.2d 286 (1996). The hardship asserted by Patullo arose from the impact of the zoning regulations applicable to the entire F–2 district, not from the circumstances unique to his property.

Relying on *Ruddy v. Lower Southampton Township Zoning Hearing Board,* 669 A.2d 1051 (Pa.Cmwlth.1995), *appeal denied,* 546 Pa. 651, 683 A.2d 887 (1996), and *Detwiler v. Zoning Hearing Board of Lower Salford Township,* 141 Pa.Cmwlth. 597, 596 A.2d 1156 (1991), Patullo nevertheless contends that he established his entitlement to a variance in this matter.

In *Ruddy,* the property owner proposed to develop the vacant lot located in the flood plain and sought a special exception and a variance from the zoning ordinance which prohibited construction or development within any identified flood plain area of the township. This Court held that a variance was necessary to enable the owner to use his property for reasonable purposes. The Court noted that the record did not establish that the grant of the application would be detrimental to the public welfare. In *Detwiler,* this Court upheld the grant of a variance from the minimum setback requirement for the construction of a single-family dwelling

on the vacant lot, which was used for limited agricultural purposes.

■ *Ruddy* and *Detwiler* are factually distinguishable and therefore not controlling in this matter. Unlike those cases involving the vacant lots, Patullo's property is currently used as the nonconforming single-family dwelling. To establish unnecessary hardship, the applicant must demonstrate that due to the physical characteristics, the property cannot be used for any permitted purpose or could only conform to such purpose at a prohibited expense, or that the property has either no value or only a distress value for any permitted purpose. *Isaacs; Davis v. Zoning Board of Adjustment,* 78 Pa.Cmwlth. 645, 468 A.2d 1183 (1983). Where, as here, the property is actually used for any purpose permitted by the zoning ordinance, the owner does not suffer unnecessary hardship necessary for granting a variance. *Miller v. Zoning Hearing Board of Ross Township,* 167 Pa.Cmwlth. 194, 647 A.2d 966 (1994).

Further, unlike *Ruddy,* the proposed garage failed to comply with the various specific requirements designed to prevent or minimize harmful effect of flooding, and the Board's finding of the adverse effect of the proposal on the public welfare is amply supported by the record.

■ As this Court has consistently held, the need or desire to expand the existing garage for or adding off-street parking to a residential dwelling does not establish unnecessary hardship required for granting a variance. *See, e.g., O'Kane v. Zoning Hearing Board of Haverford Township,* 136 Pa. Cmwlth. 188, 582 A.2d 716 (1990); *McClintock v. Zoning Hearing Board of Fairview Borough,* 118 Pa.Cmwlth. 448, 545 A.2d 470 (1988); *Allison v. Zoning Board of Adjustment of Philadelphia,* 97 Pa.Cmwlth. 51, 508 A.2d 639 (1986); *Vito v. Zoning Hearing Board of Borough of Whitehall,* 73 Pa. Cmwlth. 270, 458 A.2d 620 (1983).

Finally, Patullo contends that a variance should be granted because the requested variance is minimum.

■ The rule of de minimis variance is a narrow exception applicable only in limited situations, where the proposed dimension-

al deviations from the zoning requirement is relatively minor, and where the insistence in rigid compliance is not absolutely necessary to preserve the public policy to be obtained. *East Allegheny Community Council v. Zoning Board of Adjustment of City of Pittsburgh*, 128 Pa.Cmwlth. 391, 563 A.2d 945 (1989). The doctrine of de minimis variance is inapplicable in this matter because the variance sought by Patullo does not involve dimensional requirements of the Ordinance. Moreover, Section 2609.A of the Ordinance provides: "[N]o variance from the terms of this Article is de minimus [sic] and, therefore, to be entitled to relief, the applicant for a variance must establish that this Article imposes an unnecessary hardship."

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 9th day of October, 1997, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.