East Rockhill Township       :
      :
           v.       : No. 687 C.D. 2018
      : Argued: March 12, 2019
East Rockhill Township       :
Zoning Hearing Board       :
and James Burkey       :
      :
Appeal of: James Burkey       :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: April 9, 2019

James Burkey (Landowner) appeals from an order of the Court of Common Pleas of Bucks County (trial court) that reversed in part and affirmed in part the decision of the East Rockhill Township Zoning Hearing Board (Board). Specifically, the trial court reversed the Board's decision granting Landowner variance relief to allow an "H5 Contracting Use" on his property for his landscaping and excavating business in addition to a residential use. The trial court affirmed the Board's decision to the extent it denied Landowner's request to recognize his business activities as an "Accessory Home Occupation"; denied his request for dimensional variance relief from a business vehicle restriction; and found that Landowner violated various provisions of the East Rockhill Township Zoning Ordinance (Ordinance).[1]

---

[1] The Ordinance was enacted May 26, 1987.

In this appeal, Landowner contends that the Board abused its discretion and erred by determining that Landowner's landscaping and excavating business did not constitute an "Accessory Home Occupation" and by denying a dimensional variance for additional business vehicles in conjunction thereto. Alternatively, Landowner contends that the trial court erred in reversing the Board's decision to grant a use variance to allow an H5 Contracting Use on his property. Discerning no error, we affirm.

## I. Background

Landowner owns 18.02 acres located in East Rockhill Township (Township), Bucks County (Property). The Property is located in the RP Resource Protection District (RP District). Landowner resides at the Property and operates a landscaping and excavating business from there.

In November 2016, the Township issued Landowner a notice of violation asserting that Landowner violated the Ordinance by operating an H5 Contracting Use, which is not permitted in the RP District; having more than one principal use on the Property; and failing to obtain requisite zoning permits for the contracting use. Landowner appealed the notice of violation to the Board. Along with the appeal, Landowner submitted an application (Application) requesting an interpretation of the Ordinance to classify his business as an Accessory Home Occupation. In conjunction therewith, he requested a variance from Section 27-304(B10)(b)(6)(a) of the Ordinance to permit more than one business vehicle with loading capacities exceeding 3/4 ton at the Property (vehicle variance). In the alternative, Landowner requested variances from Sections 27-400 and 27-401 of the Ordinance to permit an H5 Contracting Use in the RP District and from Section 27-300 of the Ordinance to allow multiple principal uses on a single lot.

2

The Board held two public hearings.[2] Based on the evidence presented, the Board found that the Property is improved with a 3,412-square-foot, two-story, single-family detached dwelling, a 3,000-square-foot pole barn, a pond, an in-ground swimming pool and a shed. The Property is densely wooded, except for the area where the improvements exists. The Property is irregular in shape. A stream traverses the Property. Board Decision, 2/28/17, Findings of Fact (F.F.) Nos. 19-21.

Landowner purchased the Property in May 2016. Landowner resides in the dwelling and operates a landscaping and excavating business from the Property. Landowner uses the pole barn and surrounding outdoor area to store equipment and park vehicles related to his business. Based upon the prior owner's use of the Property for a candle-making business and all-terrain vehicle track, Landowner was under the impression that he could operate his business from the Property without further permits or approvals from the Township. F.F. Nos. 22-23, 25-26.

The Board further found that Landowner does not perform any landscaping or excavating work onsite beyond administrative work in the 400-square-foot office space located within his dwelling. All landscaping and excavating work is performed off-site at specific job sites. However, Landowner does use the Property to store equipment and park vehicles related to his business, to wit: three tri-axle dump trucks; three pick-up trucks; two small dump trucks; one backhoe; one small excavator; and four trailers. Landowner also stores road salt used in his business for snow removal. The existing pole barn is not large enough to store all the vehicles, equipment and materials associated with the business. Consequently, Landowner parks or stores some of the vehicles, equipment and salt outside, in an

---

[2] Neighboring property owners appeared in opposition to the Application and were granted party status.

3

area adjacent to the pole barn. Pursuant to his business operations, every weekday morning, three of Landowner's four employees drive to the Property in their personal vehicles, park their vehicles at the Property, and then leave the Property with any necessary equipment and vehicles required to complete tasks at various job sites. The employees arrive at the Property around 6:00 a.m. and usually return between 2:00 p.m. and 4:00 p.m. F.F. Nos. 26-31, 34.

The Board concluded that Landowner violated Ordinance Sections 27-400 (operating an H5 Contracting Use in the RP District), 27-300 (operating a second principal use), and 27-2202 (failing to obtain a permit). The Board also concluded that Landowner's business was not an Accessory Home Occupation pursuant to Section 27-304(B10) of the Ordinance because the business is not subordinate to the residential use on the Property. The Board explained that the large number of commercial vehicles, number of employees, the hours of operation, and other characteristics of the use are not customary to a Home Occupation. Landowner's business is not being carried on wholly indoors, as commercial vehicles, equipment, and materials associated with the business are parked or stored outside.

However, the Board determined that Landowner established entitlement to a variance to allow an H5 Contracting Use and more than one principal use on the Property. The Board concluded that "the Property's highly irregular shape, intermittent stream traversing the Property, the vast amount of woodlands, and the overall size of the Property establish a hardship . . . ." Board Decision, Conclusion of Law No. 10. Further, the Board concluded that an H5 Contracting Use will not alter the character of the neighborhood or be detrimental to the public welfare; the conditions and circumstances of the Property are not of Landowner's

4

doing; and the approved variances represent the minimum variances that will afford relief. Board Decision, Conclusions of Law Nos. 11-16.

Thus, the Board granted Landowner's Application for variances from Sections 27-400 and 27-401 of the Ordinance to permit an H5 Contracting Use in the RP District and from Section 27-300 of the Ordinance to permit multiple principal uses on a single lot, subject to 19 conditions. The Board denied Landowner's request to classify the business use as an Accessory Home Occupation and, in conjunction therewith, the Board denied the vehicle variance.

From this decision, the Township filed a land use appeal with the trial court on the basis that the Board abused its discretion in granting the requested variances to permit an H5 Contracting Use on the Property. Landowner intervened in the Township's appeal and filed a cross-appeal seeking relief from the Board's decision to the extent it determined that Landowner violated the Ordinance, that his business was not an Accessory Home Occupation, and that he was not entitled to a vehicle variance.

The trial court did not take additional evidence. With regard to the Township's appeal, the trial court agreed with the Township that the Board erred in granting the variances because Landowner failed to show unnecessary hardship. The trial court explained that the physical conditions do not prevent the Property from being used as a residence or for any permitted purpose within the RP District nor do they prevent Landowner from using his Property without prohibitive expense.

As for Landowner's cross-appeal, the trial court concluded that the Board did not err in determining that Landowner violated the Ordinance by operating an H5 Contracting Use, having two principal uses on the Property, and failing to obtain the required permit. The trial court also concluded that the Board did not err

5

in determining that Landowner's business does not meet the definition or standards for an Accessory Home Occupation. Having determined that Landowner's business activities did not constitute an Accessory Home Occupation, the trial court also determined that Landowner was not entitled to the vehicle variance. Thus, by order dated April 20, 2018, the trial court reversed the Board's decision insofar as it granted variance relief to allow the H5 Contracting Use and two principal uses on the Property and affirmed its decision in all other respects. From this decision, Landowner appealed to this Court.[3]

## II. Issues

In this appeal,[4] Landowner contends that the Board erred or abused its discretion by determining that Landowner's use of his Property as a base of operations for his landscaping and excavating business did not constitute an Accessory Home Occupation under the Ordinance. In connection therewith, Landowner asserts that the Board erred or abused its discretion when it denied his request for a dimensional variance to permit more than one business vehicle with loading capacity exceeding 3/4 ton at his Property. Alternatively, Landowner contends that the trial court abused its discretion and erred by reversing the Board's

---

[3] The Board filed a notice of nonparticipation. None of the residents who sought and were granted party status before the Board appealed the Board's decision or intervened in the Township's appeal.

[4] Where, as here, the trial court did not take any additional evidence, our review is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision. *Marshall v. City of Philadelphia*, 97 A.3d 323, 331 (Pa. 2014). An abuse of discretion occurs when findings of fact are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Township of Northampton v. Zoning Hearing Board Northampton Township*, 969 A.2d 24, 27 n.1 (Pa. Cmwlth. 2009).

determination that Landowner was entitled to a use variance to allow an H5 Contracting Use and a variance to allow more than one principal use on his Property.

### III. Discussion
### A. Accessory Home Occupation

First, Landowner contends that the Board abused its discretion and erred by determining that the use of his Property as a base of operations for his landscaping and excavating business did not constitute an Accessory Home Occupation under the Ordinance. According to Landowner, he proved by substantial evidence that his business meets the definition of and satisfied the criteria for an Accessory Home Occupation as a "Trade, Business" under the Ordinance. As for the criteria, Landowner maintains that, once a second pole barn is erected on the Property, all vehicles, equipment and materials related to the business will be stored wholly indoors. Pole barns are common residential accessory structures for properties used for agricultural purposes, which is a permitted use in the RP District, and thus normally associated with residential use within the district. Further, the actual business use of the Property occurs only a few hours a day when employees pick up and drop off vehicles and equipment. The only portion of the residence actually used for business activity is a 400-square-foot office space on the first floor, which constitutes less than 25% of the ground floor area of the residence.

"Whether a proposed use, as factually described in the application and the testimony, falls within a given categorization contained in the zoning regulations is a question of law, on which the zoning board's determination is subject to review." *Diversified Health Associated, Inc. v. Zoning Hearing Board of Borough of Norristown*, 781 A.2d 244, 247 (Pa. Cmwlth. 2001) (quoting *Manor Healthcare Corporation v. Lower Moreland Township Zoning Hearing Board*, 590 A.2d 65, 68

7

(Pa. Cmwlth. 1991)). The general rules of statutory construction apply to the interpretation of zoning ordinances. *Delchester Developers, L.P. v. Zoning Hearing Board of London Grove Township*, 161 A.3d 1081, 1103 (Pa. Cmwlth. 2017). Undefined words and phrases used in a zoning ordinance shall be construed according to their common and approved usage. *Id.* at 1103-04; *see* Section 1903(a) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §1903(a). However, "enactment of a specific definition in the ordinance produces a different effect because the legislative body may furnish its own definitions of words or phrases in order to guide and direct judicial determinations . . . and such definition may be different from ordinary usage." *Diversified Health*, 781 A.2d at 247. "'[A]ny doubt must be resolved in favor of the landowner and the least restrictive use of the land.'" *Id.* (quoting *Kissell v. Ferguson Township Zoning Hearing Board*, 729 A.2d 194, 197 (Pa. Cmwlth. 1999)). Furthermore, a zoning ordinance shall be construed, if possible, to give effect to all of its provisions. *Delchester*, 161 A.3d at 1104; *see* Section 1921 of the Statutory Construction Act, 1 Pa. C.S. §1921. Finally, a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. *SPTR, Inc. v. City of Philadelphia*, 150 A.3d 160, 172 n.3 (Pa. Cmwlth. 2016).

Section 27-224 of the Ordinance defines "Home Occupation," with emphasis added, as:

> An activity for gain *customarily carried on in a dwelling*, or in a building or structure accessory to a dwelling, *clearly incidental and secondary to the use of the dwelling for residential purposes*.

8

Section 27-304(B10) of the Ordinance provides that "[a]n Accessory Home Occupation is an accessory use that shall be clearly subordinate to the existing residential use of the property." Section 27-254 of the Ordinance defines an accessory use as "[a] use located on the same lot with a principal use and clearly incidental or subordinate to, and in connection with, the principal use." In addition, Section 27-207(b) of the Ordinance defines an accessory building as a "subordinate building located on the same lot as a principal building and clearly incidental and subordinate to the principal building."

An Accessory Home Occupation must also meet the following general standards:

(1) *A Home Occupation must be conducted within a dwelling* which is the bona fide residence of the principal practitioner or in an accessory building thereto which is normally associated with a residential use. *The Home Occupation shall be carried on wholly indoors.*

(2) *The maximum amount of floor area devoted to this Home Occupation shall not be more than 25% of the ground floor area of the principal residential structure of 400 square feet, whichever is less.* At least 850 square feet of the total floor area must remain in residential use.

(3) *In no way shall* the appearance of the residential structure be altered or *the occupation within the residences be conducted in a manner which would cause the premises to differ from its residential character* by the use of colors, materials, construction, lighting, show windows or advertising visible outside the premises to attract customers or clients other than those signs permitted by this chapter.

(4) One sign is permitted per Home Occupation providing that it is no larger than three square feet per side bearing only the name, occupation and office hours of the

9

practitioner. In addition, it shall not be illuminated or placed in a window.

*(5) All commercial vehicles shall be parked onlot and must be parked in a garage or an enclosed structure.*

(6) Off-street parking spaces are not permitted in the front yards. A ten foot driveway providing access to parking areas in the side or rear of the property may be located in the front yard. All off-street parking areas must be located at least 10 feet from any property line. Off-street parking lots with three or more spaces shall be buffered from abutting residences. Hedge material as specified in § 27-1905 shall be placed on three foot centers. Alternately, a four to five-foot fence may be erected which provides a visual screen.

*(7) There shall be no exterior storage of materials or refuse resulting from the operation of the Home Occupation.*

(8) *No equipment or process shall be used in a Home Occupation which creates noise*, vibration, glare, fumes, odors, dust or electrical interference detectable to the normal senses off the lot. No equipment or process shall be used which creates visible or audible interferences in any radio or television receivers off the premises.

(9) Home occupations shall not include the following animal hospitals, commercial stables and kennels, funeral parlors or undertaking establishments, antique shops, tourist homes, restaurants and rooming -boarding -lodging houses.

(10) *A zoning permit shall be required for all Accessory Home Occupations.*

Section 27-304(B10)(a)(1)-(10) of the Ordinance (emphasis added).

In addition, an Accessory Home Occupation must meet specific standards related to the occupation. Section 27-304(B10)(b) of the Ordinance. Of

relevance here, Section 27-304(B10)(b)(6) of the Ordinance sets the specific standards for "Trades, Business," which it defines as:

> The use of a residence as a base of operation for the business, but not including the conduct of any phase of the trade on the property. Trades included in this Home Occupation include, but are not limited to: electrician, plumber, carpenter, mason, painter, roofer and similar occupations.

The specific standards that apply to "Trades, Business" are:

> (a) *No more than one business vehicle may be parked on the property including noncommercial trucks and vans with loading capacities not exceeding 3/4 ton. The business vehicle shall be parked in an enclosed structure*.
>
> (b) The area of the office, storage of materials and equipment (excluding vehicles) shall not exceed the limitations of subsection (a)(2) above.
>
> (c) No assembling, manufacturing, processing or sales shall be conducted on the property.
>
> (d) The buffer requirements of § 27-1905 of this chapter shall be met.
>
> (e) In addition to the off-street parking spaces required in this chapter for the particular residential use concerned, a trades business shall provide one off-street space for each employee . . . and one off-street parking space for each business vehicle. A maximum of six off-street parking spaces are permitted on one lot inclusive of the required residential parking.

Section 27-304(B10)(b)(6)(a)-(e) of the Ordinance (emphasis added).

Here, although Landowner meets some of the criteria for an Accessory Home Occupation, he did not meet them all. First, Landowner does not conduct his business entirely within the confines of the dwelling or operate his business wholly

11

indoors. *See* Section 27-304(B10)(a)(1) of the Ordinance. While Landowner operates the administrative end of his business in his dwelling, other operations are conducted outdoors on the Property. Although landscaping and excavating work itself is performed offsite on various jobsites, the nature of Landowner's business requires daily loading and unloading of trucks headed to and from the job sites, the storage of vehicles, equipment and materials, and the cleaning of equipment, all of which occurs outside on the Property. Reproduced Record (R.R.) at 108, 112. *See Agnew v. Bushkill Township Zoning Hearing Board*, 837 A.2d 634, 638 (Pa. Cmwlth. 2003) (observing that landowner's home roofing business was not confined to administrative work conducted from the confines of the residence, but included the daily loading and unloading of trucks headed to and from the job sites; regular delivery and unloading of roofing supplies; and the storage of supplies and equipment in the outbuildings). Landowner himself testified that not all of his business vehicles and equipment are stored in the pole barn. R.R. at 108-09, 116. Some of his trucks, trailers, equipment and materials are stored outside. R.R. at 108-09, 116.

Landowner seeks to cure this problem with the erection of a second pole barn. However, the existing pole barn does not meet the Ordinance's definition of an accessory building because Landowner uses it primarily for business activities unrelated to his residential use. *See* Section 27-207(b) of the Ordinance. Consequently, the pole barn is not "incidental and subordinate" to the principal building – Landowner's dwelling. *See id.* Landowner argues that his pole barn should be considered as an accessory building because pole barns, like garages, are normally associated with residential use in the RP District. He contends that his pole barn would be considered a permitted accessory structure in conjunction with his

12

residence if his business activity was farming, in which case the building would be similarly used almost exclusively for farming rather than the residential use. However, "general farming" is a permitted use in the RP District, and this use permits multiple buildings (barns, sheds, silos) associated with the farming use as well as a detached dwelling associated with the unrelated residential use. Sections 27-401(a) and 27-304(A)(A1) of the Ordinance. Landowner's primary use of the Property is residential, and he does not use the pole barn in connection with his residential use. *See* R.R. at 107-09.

Second, the area of Landowner's office and storage of materials and equipment (excluding vehicles) exceeds the 25% ground floor area restriction. Although the size of Landowner's 400-square-foot office may meet the standard criteria in relation to the 3,412-square-foot dwelling, Landowner's business operations are not confined to the office. Landowner currently utilizes a 3,000-square-foot pole barn to store vehicles and equipment for his business activities. R.R. at 106-08. The storage of supplies and equipment is part of his business. *See Agnew*. When the pole barn is factored into the calculation, the total square footage devoted to the Home Occupation exceeds the 25% limit.

Finally, while we recognize that the business of a landscaper/excavator is akin to the trades listed as Home Occupations, which includes electricians, plumbers, carpenters, masons, painters, and roofers, it is the magnitude of Landowner's business operations that disqualifies it from a Home Occupation. Landowner's business includes several employees, a 400-square-foot office and a 3,000-square-foot pole barn devoted to business-related activities. Landowner seeks to expand his business footprint by adding a second pole barn. There is daily activity on the Property of dropping off and picking up work vehicles, loading and unloading

13

of equipment and supplies. Landowner has extended his activities beyond those customarily carried on by a person operating a trade in connection with his place of residence. It is the scale of Landowner's business operations that takes it from a Home Occupation to more of a commercial contracting use. As currently conducted, Landowner's business use is not "clearly incidental and secondary to the use of the dwelling for residential purposes." *See* Sections 27-224 and 27-304(B10) of the Ordinance.

Upon review, Landowner did not demonstrate that his business satisfied the criteria for an Accessory Home Occupation as a "Trade, Business" by substantial evidence. Thus, the Board did not err in denying Landowner's request to recognize the business as an Accessory Home Occupation and trial court properly upheld this determination.

### B. Dimensional Variance – Vehicle Variance

Next, Landowner contends that the Board abused its discretion and erred when it denied his request for a vehicle variance. Specifically, Landowner sought a dimensional variance from Section 27-304(B10)(b)(6) of the Ordinance to permit more than one business vehicle on the Property and vehicles exceeding a 3/4 ton loading capacity. Vehicles of this size are permitted by right in connection with other permitted uses in the RP District, such as intensive agriculture, farming, forestry and oil and gas drilling. Further, storage of such vehicles goes to the very nature of the Accessory Home Occupation, which cannot occur absent a variance from this requirement. Landowner proposes to store all vehicles and equipment indoors with the erection of the second pole barn. He maintains that his business will have no detrimental impact upon neighboring properties or the community in general.

14

A property owner seeking a variance bears a heavy burden. *Fowler v. City of Bethlehem Zoning Hearing Board*, 187 A.3d 287, 297 (Pa. Cmwlth. 2018). The Board may grant a variance when the following criteria are met:

> (1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 520 (Pa. Cmwlth.), *appeal denied*, 101 A.3d 788 (Pa. 2014); *accord* Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC)[5]; Section 27-2305(c)(1)-(5) of the Ordinance. "The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district." *Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014) (citing *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)).

A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998). The same criteria apply to use and dimensional variances. *Id.* However, in *Hertzberg*, our Supreme Court set forth a more relaxed

---

[5] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §10910.2(a).

15

standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance. *Id.*; *Tri-County Landfill*, 83 A.3d at 520.

Under *Hertzberg*, courts may consider multiple factors in determining whether the applicant established unnecessary hardship for a dimensional variance. 721 A.2d at 48. These factors include the cost of the strict compliance with the zoning ordinance, the economic hardship that will result from denial of a variance, and the characteristics and conditions of the surrounding neighborhood. *Id.* at 49.

Although *Hertzberg* eased the requirements, it did not remove them. *Tri-County Landfill*, 83 A.3d at 520. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, *including unnecessary hardship*. *Id.* Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*. *Id.*

"It is the function of the zoning board to determine whether the evidence satisfies the criteria for granting a variance." *Marshall*, 97 A.3d at 331. Determinations regarding the credibility of witnesses, the weight of the evidence, and the resolution of conflicts in evidence are the exclusive province of the zoning board. *Id.* When reviewing the grant or denial of a variance, the Court may not substitute its interpretation of the evidence for that of the zoning board. *Id.*

In connection with a home occupation trade, Section 27-304(B10)(b)(6)(a) of the Ordinance provides:

> (a) No more than one business vehicle may be parked on the property including noncommercial trucks and vans with loading capacities not exceeding 3/4 ton. The business vehicle shall be parked in an enclosed structure.

16

Upon review, Landowner is not entitled to a variance from this provision because, as discussed above, his business use does not qualify as an Accessory Home Occupation. Even if it did, Landowner has not shown any hardship relating to the number of business vehicles permitted on the Property and loading capacity restriction. Landowner asserts he will suffer severe economic detriment if he is not permitted to have more than one business vehicle at the Property because the very nature of his business depends on having multiple large vehicles with excess load capacity to move equipment and supplies. However, other than economic hardship, Landowner has offered no other basis to justify a dimensional variance. *See Marshall; Hertzberg*. Moreover, Landowner's assertion of hardship does not arise from the uniqueness of the Property, but from the impact of the zoning regulations on the entire district. *See Marshall*. Thus, the Board did not abuse its discretion in denying the vehicle variance and the trial court properly upheld this determination.

### C. Use Variance – H5 Contracting Use

Alternatively, Landowner argues that the trial court abused its discretion and erred by reversing the Board's determination that Landowner established entitlement to a use variance to permit an H5 Contracting Use on the Property in addition to his residential use. Landowner claims that he established the criteria for a variance. The Property suffers from many unique physical conditions that are peculiar to it, including a highly irregular shape, an intermittent stream that bisects it, considerable woodland coverage and its size, which is nine times larger than the minimum lot area requirement of the Ordinance, relative to the surrounding properties. These unique physical conditions were not created by Landowner as they are natural features of the Property. Landowner also established that the proposed

17

use would not have a detrimental impact on surrounding properties or the community as a whole because the proposed use is far less intensive and intrusive upon neighboring properties and the surrounding community than many of the permitted uses in the RP District. Landowner has taken considerable steps to minimize or eliminate potential disturbance during the few weekday hours when any business activity occurs on the Property. Moreover, Landowner agreed to all 19 conditions of approval placed on the grant of the variance by the Board to minimize any impacts of the proposed use.

Landowner's Property is located in the RP District, which permits the following uses as of right:

(1) Al General Farming.
(2) A2 Nursery.
(3) A3 Intensive Agriculture.
(4) A4 Forestry.
(5) A5 Riding Academy.
(6) A6 Kennel -Commercial.
(7) A7 Agricultural Retail.
(8) A8 Farm Unit.
(9) A10 Kennel -Noncommercial.
*(10) B1 Detached Dwelling.*
(11) B2 Cluster Subdivision.
(12) BlOa Accessory Professional Office.
(13) BlOb Accessory Personal Services.
(14) BlOc Accessory Instructional Services.
(15) BlOd Accessory Home Crafts.
(16) B11 Residential Accessory Building.
(17) B12 Garage Sales.
(18) C7 Municipal Building.
(19) Dl Recreational Facility.
(20) D2 Private Recreational Facility.
(21) E2 Veterinary Office.
(22) F21 Golf Course.
(23) Il Nonresidential Accessory Building.
(24) 13 Temporary Structure.
(25) 19 Off -Street Parking.

18

(26) HO Signs.

Section 27-401(a) of the Ordinance (emphasis added). Section 27-300 of the Ordinance provides, with emphasis added, "[o]n any property, parcel or tract of land, *only one principal use shall be permitted*." Section 27-254 of the Ordinance defines "principal use" as "the main use on a lot."

Section 27-304(H5) of the Ordinance classifies an H5 Contracting Use as an industrial use. Section 27-304(H5) defines an H5 Contracting Use as "[c]ontractor offices and shops such as building, cement, electrical, heating, masonry, painting and roofing." An H5 Contracting Use is not a permitted use in the RP District. *See* Section 27-401(a) of the Ordinance. Hence, a variance was required.

As set forth above, the standards for a use variance required Landowner to show, *inter alia*, that unnecessary hardship will result if the variance is denied due to the unique physical circumstances or conditions of the Property. *See Tri-County Landfill,* 83 A.3d at 520. An unnecessary hardship deprives a property owner of the reasonable use of his property. *Nowicki v. Zoning Hearing Board of Borough of Monaca*, 91 A.3d 287, 293 (Pa. Cmwlth. 2014). To establish unnecessary hardship, as required for a use variance, a property owner must prove that: "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance." *Hertzberg*, 721 A.2d at 47; *accord Nowicki*, 91 A.3d at 292. "[M]ultiple factors are to be taken into account when assessing whether unnecessary hardship has been established." *Marshall*, 97 A.3d at 330 (citation and internal quotation omitted). "Although a property owner is not required to show that his or

19

her property is valueless unless a variance is granted, mere economic hardship will not of itself justify a grant of a variance." *Id.* (citation and internal quotation omitted). Similarly, evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance. *Id.* Where the property is actually used for any purpose permitted by a zoning ordinance, the owner does not suffer unnecessary hardship. *Patullo v. Zoning Hearing Board of Middletown Township*, 701 A.2d 295, 300 (Pa. Cmwlth. 1997).

Here, the record contains substantial, undisputed evidence regarding the Property's unique physical conditions. The Property has an irregular shape, is encumbered with an intermittent stream that bisects the Property, has vast woodlands, and is relatively large compared to surrounding properties. However, Landowner did not show how these unique physical conditions prevent him from utilizing or developing the Property in strict conformance with the Ordinance. There is no evidence that the Property's physical conditions prevent the Property from being used for any of the many permitted uses in the RP District or that conformance with a permitted use would be prohibitively expensive. In fact, the Property is currently developed and used as Landowner's primary residence. The only claim Landowner can reasonably make is that, if the variance is denied, the use of his Property will be less financially rewarding. However, such a circumstance is insufficient to meet the standard. *See Marshall*.

Upon review, the Board's findings regarding unnecessary hardship are not supported by substantial evidence. Consequently, the Board abused its discretion by granting variances to allow the H5 Contracting Use and second principal use on the Property. The trial court properly reversed this portion of the Board's decision.

20

## IV. Conclusion

We conclude that Board did not err in denying Landowner's request to recognize his landscaping and excavating business as an Accessory Home Occupation and dimensional request for a vehicle variance related thereto. However, the Board did err in granting Landowner a variance to allow the H5 Contracting Use and second principal use on the Property. Thus, the trial court properly reversed the Board's decision insofar as it granted the H5 Contracting Use and second principal use variances and affirmed in all other respects.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Rockhill Township      :
                                      :
                    v.             : No. 687 C.D. 2018
                                        :

East Rockhill Township      :
Zoning Hearing Board      :
and James Burkey          :
                                        :

Appeal of: James Burkey   :

## O R D E R

AND NOW, this 9th day of April, 2019, the order of the Court of Common Pleas of Bucks County, dated April 20, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge